BARNES, J.,
for the Court:
¶ 1. This case arises out of a June 14, 2007 automobile accident in which Brandon Bolden was killed. His parents, Artis and Marilyn Bolden (the Boldens), filed suit as wrongful death beneficiaries against Jamaal Murray and Mississippi Farm Bureau Casualty Insurance Co. (Farm Bureau), the insurer of the Boldens’ vehicle in which the accident occurred. The Boldens contend Murray was driving the Boldens’ vehicle at the time of the accident, and/or another vehicle was involved in the accident, thus entitling them to uninsured-motorist coverage under their policy with Farm Bureau. Alternatively, the Boldens contend Murray, as a passenger, “negligently distract[ed]” Brandon; Farm Bureau’s attorneys should recuse; and Farm Bureau was guilty of “spoliation of evidence” concerning the vehicle.
¶ 2. The Circuit Court of Hinds County granted summary judgment to Murray and Farm Bureau. We find no error and affirm.
FACTS
¶ 3. Marilyn Bolden, Brandon’s mother, owned a two-door convertible 2003 AMG Mercedes SL55 Kompressor automobile. On the night of the crash, June 14, 2007, Brandon was using his mother’s vehicle. He and a friend, Murray, went to a Jackson, Mississippi bar and restaurant called Hamp’s Place, where they spent part of the evening. After leaving Hamp’s Place for a while, they returned and picked up food Murray had ordered. Around 3 a.m., they headed to a different bar in the Mercedes. Murray testified that Brandon was driving the vehicle while Murray was in the passenger seat, eating a chicken plate. Neither was wearing a seat belt. Murray also testified that Brandon was speeding and lost control of the vehicle at the intersection of Medgar Evers Boulevard and Sunset Drive (not far from Hamp’s Place), causing the vehicle to leave the road, spin around, and ultimately come to rest against a tree. Murray stated he was thrown from the vehicle and injured. He called to report the accident using a cell phone he had borrowed from someone who came to the accident scene. Murray then fled the scene after police and emergency medical personnel arrived because of an outstanding warrant for his arrest on another matter. Murray claimed no other vehicle was involved in the accident.
¶ 4. The Mercedes was rendered a total loss. Directly following the accident, the vehicle was towed to the City of Jackson’s impound lot. Then, in early July 2007, the Boldens had the vehicle moved to ABC Towing because they wanted to have a “specialist” look at it. Also in July 2007, Farm Bureau retained the Copeland, Cook, Taylor & Bush law firm to represent it with regard to the investigation of the accident and any potential uninsured-motorist claim that might arise. On July 10, 2007, Copeland Cook sent a letter to the Boldens informing them of the firm’s representation. The Boldens- were also instructed to preserve the vehicle’s then-condition at ABC Towing pending Farm Bureau’s investigation of the accident. They were also requested to move the vehicle to Insurance Auto Auctions (IAA) to avoid further storage fees at ABC Towing.
¶ 5. In a letter dated July 16, 2007, Farm Bureau sent Marilyn Bolden a check *713 for $57,196.25 for settlement of the collision claim for the property damage to the vehicle. As a result, the title to the vehicle was transferred to Farm Bureau. Farm Bureau also advised the Boldens that it would be responsible for storage fees at ABC Towing only through July 31, 2007. The Boldens complied with Farm Bureau’s request and agreed to move the vehicle to IAA on July 24, 2007. Barry Kelley, on behalf of Farm Bureau, contacted IAA and placed a “hold” on the vehicle salvage, instructing IAA that the vehicle be preserved. Business records from IAA confirm these instructions by Farm Bureau.
¶ 6. In September 2007, Murray’s statement was taken. In October 2007, Farm Bureau wrote the Boldens concluding that its investigation showed Brandon was the individual driving the Mercedes, and also that no other vehicle had been involved in the accident or made contact with the Mercedes. Therefore, under the Boldens’ insurance policy, uninsured-motorist coverage would not cover the accident. In response, the Boldens wrote Farm Bureau requesting various information or reports on the accident and asking how long the vehicle would be stored at IAA. In early November 2007, Farm Bureau learned that on September 6, 2007, against its instructions, IAA sold the vehicle salvage to a third party in Florida, which had sold the salvage to yet another buyer. Farm Bureau was unsuccessful in retrieving any portion of the vehicle wreckage. Also in November 2007, Murray’s claim for damages arising from the accident was settled.
¶ 7. On February 20, 2009, the Boldens filed a complaint against Farm Bureau and Murray. Farm Bureau’s motion for summary judgment was filed in November 2009, claiming the Boldens are not entitled to uninsured-motorist benefits because it was undisputed Brandon was the driver of the Mercedes, and there was not a second vehicle involved.[1] Further, there was only one eyewitness to the accident — codefen-dant Murray. Additionally, Farm Bureau argued against the Boldens’ claim that Farm Bureau is guilty of spoliation of evidence because the salvage of the vehicle was lost or destroyed. Murray’s motion for summary judgment was filed in December 2009, arguing the Boldens’ negligence claims against him for contributing to the accident were contrary to the evidence.
¶ 8. The Boldens claimed that due to the driver’s seat being in a “locked, forward position, which was not the usual position of the car when driven by Brandon,” the issue of the driver’s identity was a factual issue for the jury. The trial court found no support for this contention. Murray testified Brandon was driving at the time of the accident. Murray also stated Brandon never let Murray drive this car. Finally, Murray stated that no other car was involved in the accident.
¶ 9. On June 11, 2010, the trial court entered an order staying consideration of the motions for summary judgment and *714 limiting discovery to the sole issue of the identity of the driver at the time of the accident. Additionally, on this same date, the trial court entered an order denying the Boldens’ motion to recuse Farm Bureau’s counsel of record, Copeland Cook. The Boldens alleged a conflict of interest relating to the firm’s role in having the vehicle moved and in settling Murray’s claims from the wreck on behalf of Brandon and the Boldens.
¶ 10. After discovery was limited to the identity of the driver, the Boldens deposed the three police officers who arrived at the scene. None was able to identify the driver, but Officer Perry Tate stated several other people “that were gathering around the scene [were] saying that [when] Brandon left the club ... he was driving the vehicle.” These people were not identified in the officer’s report because they “didn’t really want to get involved.” These people were not separately identified or deposed. Farm Bureau had provided the Bolden’s a list of potential witnesses and their telephone numbers before the Boldens filed their complaint.
¶ 11. Officer Joseph Cotton testified that the only evidence that Brandon was driving came from interviews with Murray and Caleb Hampton, the nightclub owner, weeks after the accident. Officer Cotton, who stated that he was an accident recon-structionist, testified that his investigation of the accident showed no physical or other evidence that anyone other than Brandon was operating the accident vehicle. Additionally, during the course of the lawsuit, over 800 photographs of the accident scene and vehicle were produced, some of which are part of the record on appeal.
¶ 12. The trial court entered its order granting Murray’s and Farm Bureau’s motions for summary judgment on September 28, 2010. The Boldens timely appealed.
STANDARD OF REVIEW
¶ 18. The standard of review of a trial court’s grant of a motion for summary judgment is de novo. Buckel v. Chaney, 47 So.3d 148, 152-53 (¶ 9) (Miss.2010) (citing Whitaker v. Limeco Corp., 32 So.3d 429, 433-34 (¶ 10) (Miss.2010)). Therefore, this Court must use “a factual review tantamount to that of the trial court when considering evidentiary matters in the record.” Id. at 153 (quoting Moss v. Batesville Casket Co., 935 So.2d 393, 398 (¶ 15) (Miss.2006)).
¶ 14. In conducting its review, the appellate court looks “at all evidentiary matters before [it], including admissions in pleadings, answers to interrogatories, depositions, and affidavits.” Brown ex rel. Ford v. J.J. Ferguson Sand & Gravel Co., 858 So.2d 129, 130 (¶ 5) (Miss.2003) (citing Lee v. Golden Triangle Planning & Dev. Dist., Inc., 797 So.2d 845, 847 (¶ 5) (Miss.2001)). This evidence will be viewed in the light most favorable to the nonmoving party. Id. (citing Leslie v. City of Biloxi, 758 So.2d 430, 431 (¶ 5) (Miss.2000)).
¶ 15. “The party requesting summary judgment bears the burden of demonstrating that no genuine issue of material fact exists.” Buckel, 47 So.3d at 153 (¶ 10) (citing Watson Quality Ford, Inc. v. Casanova, 999 So.2d 830, 833 (¶ 7) (Miss.2008)). “When the moving party has supported its motion in accordance with Mississippi Rule of Civil Procedure 56, ‘an adverse party may not rest upon the mere allegations or denials of his pleadings; his response must set forth specific facts showing there is a genuine issue for trial.’” Id. (quoting M.R.C.P. 56(e)). Elements of a claim on which a party bears the burden of proof must be supported by “more than a mere scintilla of colorable evidence; it must be evidence upon which a fair-minded jury could return a favorable verdict.” Luvene v. Waldrup, 903 So.2d 745, 748 (¶ 10) *715 (Miss.2005) (quoting Wilbourn v. Stennett, Wilkinson & Ward, 687 So.2d 1205, 1214 (Miss.1996)). “[S]ummary judgment is appropriate when the non-moving party has failed to ‘make a showing sufficient to establish the existence of an element essential to the party’s case, and on which that party will bear the burden of proof at trial.’ ” Watson Quality Ford, 999 So.2d at 883 (¶7) (quoting Bullard v. Guardian Life Ins. Co., 941 So.2d 812, 814 (¶6) (Miss.2006)).
DISCUSSION
¶ 16. The Boldens raise three issues, which we shall divide into four for clarity’s sake. They claim the trial court erred in granting the motions for summary judgment because there was a genuine issue of material fact as to whether Brandon or Murray was driving the vehicle during the accident. They also argue the trial court erred in finding that, under Mississippi law, there was no spoliation-of-evidence claim regarding the loss of the vehicle. Further, they claim the trial court erred in its June 2010 order restricting discovery only to the issue of whether Brandon was the driver. Finally, the Boldens contend the trial court erred in denying their motion to recuse Farm Bureau’s counsel.
I. The driver of the vehicle
¶ 17. The Boldens argue there is a genuine issue of material fact regarding the identity of the driver of the vehicle at the time of the accident. They claim the only person who said Brandon was definitely driving was Murray, therefore leaving a jury question. In support of their contention, the Boldens offer the testimony of various police officers who arrived upon the scene after the crash, none of whom could identify who was driving the vehicle (both Brandon and Murray were ejected from the vehicle after the crash). Further, the Boldens state that photographs of the damaged vehicle show the driver’s seat was set in a forward position; so Murray could have been the driver, as Brandon was tall and drove with the seat in the farthest-back position.
¶ 18. The trial court based its grant of summary judgment on “the lack of reliable evidence that any person other than the decedent, Brandon Bolden, was driving the vehicle at the time of the subject accident ... especially in light of the Plaintiffs’ failure to establish a genuine issue of fact after the Court permitted a M.R.C.P. 56(f) continuance and further, limited discovery.” After our de novo review of the record, we agree.
¶ 19. Murray stated in his deposition that he was a passenger in the vehicle and not the driver. The trial court found in its order granting summary judgment that Murray’s deposition testimony was “uncon-tradicted by any reliable evidence.” We agree. Murray was apparently the only eyewitness to the accident other than the decedent, Brandon. Also, while Murray frequently rode in the Mercedes with Brandon, Brandon never let him drive it, nor had Murray asked him to drive it.
¶ 20. The Boldens offered into evidence testimony by law enforcement officers Perry Tate, Joseph Cotton, and Robert Buf-kin. Officer Tate testified that he was told by witnesses at the scene that Brandon was driving the vehicle when it “left a club not far from the scene.” He said the “people gathering around the scene” said Brandon was driving when the vehicle “left the club,” and there were “several witnesses” who did not want to “get involved.” These witnesses, according to Officer Tate, all “came from the club,” and the club was only the “next street over” from the scene.
¶ 21. Officer Cotton, an accident recon-structionist, testified that there was no *716 evidence anyone “other than” Brandon operated the vehicle. He also testified that the backs of both seats appeared in the same relative position after the accident. Regarding the seat position, Murray testified: “Sometimes he [Brandon] put it back. But he was always complaining that the car was too small, so he may change it every day.” In short, there was no evidence that Brandon always had the seat back or that the position of the seat after the accident was definitive of who the driver was. There was no other contradicting testimony about the position of the seat. Moreover, from the post-accident photographs of the interior of the vehicle, the position of the seats is unclear due to the mangled nature of the vehicle wreckage.
¶ 22. The dissent would have us reverse the trial court’s grant of summary judgment because Murray’s deposition testimony was “self-serving.” While the Mississippi Supreme Court has “expressed disdain for conclusory, self-serving” statements, “self-serving” statements alone are not prohibited, but statements that are conclusory and self-serving. Sweet v. TCI MS, Inc., 47 So.3d 89, 93 (¶ 19) (Miss.2010); Buckel, 47 So.3d at 154 (¶ 15) (chancellor did not err in allowing affidavit that was based on personal knowledge and was not conclusory). In Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay, 42 So.3d 474, 487 (¶ 35) (Miss.2010), the Mississippi Supreme Court reiterated that “a conclusory, self-serving affidavit, unsupported by material facts relevant to the proposition at issue, is insufficient” as a basis to grant summary judgment. (Emphasis added.)
¶ 23. Here, Murray was making a statement of fact, not a conclusory statement, when he testified that he was not driving the vehicle. Murray’s testimony was based on personal knowledge. He denied he had ever driven this vehicle, particularly prior to or during the accident. The Boldens presented no evidence that Murray’s testimony was false. Moreover, no other testimony concerning the driver of the vehicle was ever offered. Both Murray and Farm Bureau filed itemized, un-contradicted facts stating Brandon was the driver. The Boldens offered no probative evidence to prove Murray may have been driving; they merely made speculations that he was. “Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment.” Bucket, 47 So.3d at 153 (¶ 10) (quoting Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983)). The Bol-dens’ speculations, without proof, are insufficient to overcome summary judgment.
¶ 24. We note the Boldens, through their attorney, had the opportunity to question Murray during his deposition and cross-examine him regarding his statement that Brandon was the driver and that no other vehicles caused or contributed to the accident. The Boldens also had the opportunity to offer other testimony or evidence that someone other than Brandon was the driver, but failed to do so.
¶ 25. In support of their motion for continuance of March 2010, the Boldens listed many depositions that could be taken to “assist the Court in its deliberations on the summary judgment motions argued by Defendants.” These depositions were never scheduled or taken. The only deposition taken before the Boldens’ motion for continuance was Murray’s, and after the continuance, those of the officers who arrived after the accident. Even if the additional depositions were taken, the Boldens have not explained how the additional discovery would have allowed them to defeat Farm Bureau’s or Murray’s motions for summary judgment or show another driver was involved. Further, the automobile was in the custody of the Boldens from *717 June 14, 2007, until it was moved to IAA on July 24, 2007, and they could have had a “specialist” examine it for evidence of another vehicle’s involvement in the accident. They have not identified what other individuals could be deposed who could create a genuine issue of material fact as to the existence of a hit-and-run driver.
¶ 26. The trial court properly determined that there was no genuine issue of material fact regarding the identify of the driver of the vehicle.
II. Spoliation of evidence[2]
¶ 27. The Boldens maintain that Farm Bureau’s failure to preserve the vehicle for them investigative purposes gives rise to an adverse inference that any evidence that might have been found after the inspection of the vehicle would have shown Murray to have been the driver. In this case, the trial court also found that, under Mississippi law, there is no separate cause of action for any alleged spoliation-of-evidence claim. The Boldens claim this finding is error as well, and this case warrants the tort’s recognition in Mississippi. Alternatively, the Boldens argue Farm Bureau is liable for spoliation under a general theory of negligence.
¶ 28. After the accident, the Mercedes convertible was towed to the City of Jackson impound lot by L & G Towing and then transferred to ABC Towing by the Boldens. Marilyn informed a representative of Farm Bureau on July 5, 2007, the vehicle had been moved to ABC Towing “because the Boldens want to have a ‘specialist’ look at it.” Marilyn also asked to be present during the inspection of the vehicle by Farm Bureau’s accident-reconstruction expert. Farm Bureau’s representative agreed.
¶ 29. On July 10, 2007, Farm Bureau’s attorneys sent a letter to the Boldens stating Farm Bureau had hired a firm to investigate the accident, and “it is imperative that you make no changes to the vehicle and that the vehicle is stored in a safe and secure place.... ” The letter also requested the vehicle “be moved to Insurance Auto Auctions ... in Jackson.” Another letter was sent to the Boldens again requesting the vehicle be moved to IAA. Farm Bureau stated it would not be responsible for storage fees beyond the end of the month. Two days later Marilyn wrote Farm Bureau and enclosed the documents necessary to have the vehicle moved.
¶ 30. On July 23, 2007, Farm Bureau settled the Boldens’ collision claim regarding the vehicle, and it was moved to IAA the next day. When the vehicle was being moved to IAA, Farm Bureau contacted IAA and placed a “hold” on the vehicle salvage, instructing IAA to preserve the vehicle and not dispose of it in any way. However, in early November 2007, Farm Bureau learned that in September, IAA had sold the vehicle salvage to Unique Auto Sales in Opa Locka, Florida, which dismantled the vehicle and sold the parts to another buyer. Farm Bureau was unable to retrieve any part of the vehicle wreckage.
¶ 31. Under current Mississippi law, there is no cause of action for a “spoliation of evidence” claim. Richardson v. Sara Lee Corp., 847 So.2d 821, 824 (¶ 6) (Miss.2003). The Mississippi Supreme Court has said: “We refuse to recognize a separate tort for intentional spoliation of evidence against both first and third party spoliators.” Dowdle Butane Gas Co. v. Moore, 831 So.2d 1124, 1135
*718 (¶ 28) (Miss.2002). In Richardson, the supreme court stated:
The Dowdle reasoning in refusing to recognize an independent cause of action for intentional spoliation of evidence gains even more force when applied to the issue of whether to recognize an independent cause of action for negligent spoliation of evidence. Accordingly, we decline Richardson’s invitation to recognize this independent tort.
Richardson, 847 So.2d at 824 (¶ 6). However, the Mississippi Supreme Court has held that “[w]hen evidence is lost or destroyed by one party ... thus hindering the other party’s ability to prove his case, a presumption is raised that the missing evidence would have been unfavorable to the party responsible for its loss.” Thomas v. Isle of Capri Casino, 781 So.2d 125, 183 (¶ 37) (Miss.2001). The Thomas court explained: “Because the presumption of unfavorability is not solely confined to the specific issue of what information was contained in the missing evidence, the fact finder is free to draw a general negative inference from the act of spoliation, regardless of what the spoliator’s rebuttal evidence shows.” Id.; see also DeLaughter v. Lawrence County Hosp., 601 So.2d 818, 822 (Miss.1992) (“[W]here a [medical] record required by law to be kept is unavailable due to negligence, an inference arises that the record contained information unfavorable to the hospital, and the jury should be so instructed.”) (emphasis added).[3] Finally, for purposes of summary judgment, “the destruction [or spoliation] of evidence, standing alone,” is not “enough to allow a party who has produced no evidence — or utterly inadequate evidence — in support of a given claim to survive summary judgment on that claim.” Kronisch v. United States, 150 F.3d 112, 128 (2d. Cir.1998).
¶32. In this case, the Boldens were not entitled to a negative inference regarding the loss of the salvage of the Mercedes because there is no evidence of intentional spoliation or fraud by Farm Bureau. The Boldens had the vehicle in their control for over a month until it was delivered to IAA. There is testimony that Kelley, on behalf of Farm Bureau, asked IAA to place a “hold” on the vehicle, and the records of IAA confirm the request. The Boldens had time to depose IAA regarding these records and IAA’s business relations -with Farm Bureau in order to prove negligent or intentional destruction of the evidence, but did not. There is also no evidence IAA was an improper place to store the vehicle, and the Boldens offered no evidence of negligent entrustment. Further, there is no indication that the sale of the vehicle wreckage by the salvage shop in Florida was the result of any action taken by Farm Bureau, such that the absence of evidence would be due to some negligent act. Moreover, even if there was a negative inference, the Boldens offered nothing else to counter Murray’s testimony that Brandon was driving. Therefore, the mere absence of the vehicle — and the failure of the Boldens to provide any evidence of intentional or negligent destruction, or negligent entrustment of the vehi *719 cle to IAA — does not allow the Boldens’ claim of spoliation to survive summary judgment.
¶ 33. In the alternative, the Bol-dens argue that Farm Bureau is liable under a general theory of negligence for the loss of the vehicle salvage. “The traditional elements of negligence are duty or standard of care, breach of that duty, proximate causation, and damages or injury.” Thomas v. Columbia Group, LLC, 969 So.2d 849, 852 (¶ 11) (Miss.2007) (citing Lyle v. Mladinich, 584 So.2d 397, 398 (Miss.1991)). However, Farm Bureau was not under any general legal duty to preserve the vehicle, as the Boldens contend. Title of the vehicle was transferred after Marilyn received a check for $57,196.25 in settlement of the collision claim. Furthermore, even if there was a duty, there is no evidence of a breach. Farm Bureau instructed IAA to place a “hold” on the vehicle and not to sell it. But, IAA disregarded Farm Bureau’s instructions and sold it to a third party. Therefore, it was the negligence of a third party, not Farm Bureau, that caused the loss of the vehicle. And, as previously noted, the Boldens offered no evidence that Farm Bureau was negligent in entrusting the vehicle to IAA.
¶ 34. Nor is there any evidence that the loss of the Mercedes significantly impaired the Boldens’ case. The vehicle was in the Boldens’ possession for over a month. We note that hundreds of photographs of the wrecked vehicle were taken and entered into evidence. Farm Bureau obtained and produced 124 photographs taken by the Jackson Police Department of the accident scene and the vehicle there. Farm Bureau also produced over 600 photographs taken by its adjustors and accident-reconstruction experts who examined the accident scene and vehicle. Of these photographs, over 300 were of the vehicle after the accident.
¶ 35. Accordingly, there is no merit to the Boldens’ spoliation-of-evidence issues.
III. Limitation of Discovery
¶ 36. In a June 11, 2010 order, the trial court stayed consideration of Murray’s and Farm Bureau’s motions for summary'judgment upon the Boldens’ request under Mississippi Rule of Civil Procedure 56(f). However, the trial court limited discovery solely to the investigation of the identity of the driver at the time of the accident. The Boldens claim this limitation was error and impeded discovery of information related to their other claims of spoliation, any related negligence of Farm Bureau, potential uninsured-motorist coverage as to whether there was a hit-and-run vehicle involved in the accident, and their recusal of attorneys motion.
¶ 37. “The decision to grant additional time for discovery in lieu of summary judgment is within the sound discretion of the trial judge and will not be reversed by [the appellate court] unless the decision can be characterized as an abuse of discretion.” Vaughn v. Miss.Baptist Med. Ctr., 20 So.3d 645, 655-56 (¶ 35) (Miss.2009) (citing Miss. Ins. Guar. Ass’n v. MS Gas. Ins. Co., 947 So.2d 865, 876 (¶ 28) (Miss.2006)). “A party opposing a motion for summary judgment may request a continuance in order to conduct further discovery” according to Rule 56(f). Owens v. Thomae, 759 So.2d 1117, 1120 (¶ 11) (Miss.1999). “[T]he party resisting summary judgment must present specific facts why he cannot oppose the motion and must specifically demonstrate ‘how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant’s showing of the absence of a genuine issue of fact.’ ” Prescott v. Leaf River Forest Prods., Inc., 740 So.2d 301, 308 (¶ 13) (Miss.1999) (quoting *720 United States v. Little Al, 712 F.2d 133, 135 (5th Cir.1983)).
¶38. The complaint in this case was filed in February 2009 and discovery was not limited until June 2010. Therefore, the Boldens had well over a year to engage in unfettered discovery. Uniform Circuit and County Court Rule 4.04(A) states “[a]ll discovery must be completed within ninety days from service of an answer by the applicable defendant,” but “[additional discovery time may be allowed with leave of court upon written motion setting forth good cause for the extension.” The trial court pointed out that even though the court limited discovery in July 2010, the Boldens had a previous opportunity to conduct discovery, and the Boldens requested and received a continuance in December 2009, nine months after the filing of the lawsuit. The record shows the Boldens did not notice any depositions during this nine-month period. Murray and Farm Bureau[4] claim the trial court was overly indulgent to the Boldens in allowing further limited discovery. We find no error with the trial court’s grant of a continuance, nor do we find error in the limitation of discovery it imposed on the Boldens, as the trial court has full discretion in handling discovery matters.
IV. Recusal of counsel[5]
¶ 39. On February 1, 2010, the Boldens filed a motion to recuse counsel of record, arguing the attorneys of Copeland Cook should be recused because of a conflict of interest relating to the firm’s role in having the vehicle moved and in settling Murray’s claim from the wreck on behalf of Brandon and the Boldens. The motion was denied, which the Boldens claim was error.
¶ 40. In support of their argument, the Boldens cite to Mississippi Rule of Professional Conduct 1.9(a), which states that “[a] lawyer who has formally represented a client in a matter shall not ... represent another in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client....” Relatedly, they cite to Rule 1.10(b), which states “the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person .... ”
¶ 41. As stated in the Boldens’ complaint, Copeland Cook was hired by Farm Bureau “to investigate the accident,” particularly any potential uninsured-motorist claim that might arise out of the accident. The Boldens’ complaint also alleges Copeland Cook took a position contrary to that of the Boldens and was not their advocate. Further, counsel for Copeland Cook, J. Tucker Mitchell, testified by affidavit that the vehicle was moved to IAA by Farm Bureau representatives. The trial court found Copeland Cook had sufficiently showed the firm’s non-involvement in moving the vehicle to IAA. We find no evidence to the contrary.
¶ 42. Nor did Copeland Cook represent Farm Bureau in settling the liability claim made by Murray. Rather, the claim was settled by Farm Bureau through its claims representative negotiating with Murray’s attorney. The Boldens were represented *721 by counsel of their own choosing. No attorney with Copeland Cook had an attorney-client relationship with the Boldens or acted on their behalf.
¶ 43. Although the motion states the trial court allowed the Boldens “to depose an attorney or attorneys of Copeland Cook regarding facts in this case,” no deposition was scheduled or taken. The settlement with Murray was by Farm Bureau with funds from Farm Bureau and under its insurance policy, which does not provide for notice to or consent of the insured regarding any liability settlement with a third party, as long as the claim is within policy limits. As the policy provides: “We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.... ” Copeland Cook swore by affidavit that the firm was not involved in the settlement; there is no evidence to the contrary.
¶ 44. Because the evidence is sufficient that Copeland Cook was not involved in either the transfer of the vehicle to IAA or the settlement, this issue has no merit.
¶ 45. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, MAXWELL AND FAIR, JJ„ CONCUR. CARLTON, J„ CONCURS IN RESULT ONLY. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY RUSSELL, J.

. Farm Bureau acknowledged in its motion for summary judgment that "uninsured motorist benefits could only be available to Plaintiffs under the Farm Bureau policy if (a) a second vehicle had been involved in the accident; or (b) Jamaal Murray had been driving the vehicle in which Plaintiffs’ decedent was killed.”
The Mercedes was registered in Marilyn’s name and insured by Farm Bureau under policy number A3002446. On October 24, 2007, Farm Bureau wrote the Boldens, telling them that although uninsured-motorist coverage was available on the vehicle, it was Farm Bureau’s position that no other uninsured actor contributed to the accident. The letter stated that "there does not appear to have been a second vehicle involved in the collision.” A Februaiy 1, 2008, letter to the Bol-dens also stated the evidence showed there was no contact with another vehicle that would have caused the accident.

. This issue has no bearing on Murray.

. Prior to Thomas, the general rule was that intentional, not negligent, spoliation of evidence raised "a presumption, or, more properly, an inference, that this evidence would have been unfavorable” to the spoliator; the inference was raised only where the destruction was intentional and indicated fraud, and did not arise without it. Washington v. State, 478 So.2d 1028, 1032 (Miss.1985). Thomas allows the negative inference to arise for negligent loss or destruction of the evidence as well. The Thomas court explained that requiring a litigant to prove fraudulent intent of the spoliator would be "too onerous a burden,” and it would encourage parties to "inadvertently” lose damning evidence and make "innocent” explanations of the loss. Thomas, 781 So.2d at 133 (¶ 40).

. Murray claims this issue is directed at Farm Bureau and not him because discovery was allowed on the identity of the driver; however, on appeal he addresses the merits of this issue anyway.

. This issue, as Murray acknowledges, does not pertain to him but to Farm Bureau.