# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01806-COA

IN THE MATTER OF THE ESTATE OF MARY        APPELLANT
EDNA YOAKUM, DECEASED: HENRY
WILLIAM YOAKUM

v.

MARY VIRGINIA SMITH        APPELLEE

DATE OF JUDGMENT:        11/22/2019
TRIAL JUDGE:        HON. GERALD MARION MARTIN
COURT FROM WHICH APPEALED:        SIMPSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        DANIEL DEWAYNE WARE
ATTORNEY FOR APPELLEE:        JAMES BURVON SYKES III
NATURE OF THE CASE:        CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:        REVERSED AND REMANDED - 02/09/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. Henry William Yoakum ("Henry") appeals the Simpson County Chancery Court's grant of summary judgment in favor of Mary Virginia Smith ("Mary"). Finding that a genuine issue of material fact exists, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2. Mary Edna Yoakum ("Yoakum") died on September 15, 2007, leaving three surviving children: Mary, Henry, and Louie Barnes.[1] In August 2017, Mary filed a petition to establish and probate a will dated October 25, 1999. The 1999 will designated Mary and/or her son

---

[1] Yoakum had another son, John Barnes, but he predeceased her.

as administrator of Yoakum's estate and named several beneficiaries, including all of Yoakum's surviving children.

¶3.    Henry filed an answer denying that the 1999 will was Yoakum's last will and testament and a caveat against probate of the 1999 will.  Henry attached to his answer a holographic will dated November 21, 2004, which stated:

> This will dated November 21, 2004 supercedes any other will that I, Mary Edna Yoakum, had written previously.
>
> (1) I would like my youngest son, Henry William Yoakum, to become the owner of everything that I possess - - my home and all its contents . . . as well as the acreage the house sits on and any out-buildings, and my 1999 Toyota Tacoma pick-up truck, current mileage of 51,181 miles.

The holographic will contains the signature "Mary Edna Yoakum."  Henry also attached a typed will dated November 22, 2004, which contained nearly identical language and the signature "Mary Edna Yoakum."  The typed will also appeared to contain the signatures of two witnesses:  Lynne Wynne and Jenny Yoakum ("Jenny").

¶4.    Subsequently, Mary filed a caveat against probate of the 2004 wills.  Mary asserted that the holographic will had not been duly executed because it had not been written entirely in Yoakum's handwriting, and Yoakum's signature had been forged.  Mary also asserted that the typed will had not been duly executed because Yoakum's signature had been forged, and "it [was] plainly evident that the same person signed the witness names of Lynne M. Wynne and Jenny Yoakum."  Alternatively, Mary asserted that Yoakum did not have the mental capacity to execute the 2004 wills and had been unduly influenced by Henry.

2

¶5.    Thereafter, Jenny executed an "Affidavit of Subscribing Witness." In the affidavit, Jenny stated that Yoakum signed the typed will in her presence and in the presence of Wynne, the other subscribing witness. Additionally, Jenny executed an "Affidavit Proving Holographic Will." Jenny stated that she was familiar with Yoakum's handwriting and signature and that the holographic will and signature were written in Yoakum's handwriting. Finally, Jenny stated that she had no interest in Yoakum's estate.

¶6.    Henry filed a counterclaim requesting that the will dated November 22, 2004, be probated and that he be appointed administrator. Subsequently, Mary filed a motion for summary judgment for the dismissal of Henry's counterclaim. In support of her motion, she attached a report from Stephen Drexler, an expert in forensic document-and-handwriting examination. Drexler had compared the 2004 wills to "[h]andwriting standard identified as known handwriting from [Yoakum],"[2] and it was his opinion that the signatures on the wills were not written by the author of the known handwriting standards. Mary also executed and attached an affidavit in which she stated that she was familiar with Yoakum's signature, and in her opinion the signatures on the 2004 wills had been forged. In response, Henry argued that Jenny's affidavit created a genuine issue of material fact.

¶7.    At a hearing, Mary's attorney asserted that her sole claim was that the 2004 wills had not been properly executed because Yoakum's signature had been forged. In response,

_____

[2] Drexler's report noted that "[t]his standard consisted of original and images of normal-course-of-business writings of [Yoakum] . . . ."

Henry's attorney argued that "[Henry] has a subscribing witness that was one of his ex-wives, and this is not in the record, but she told us I saw her sign this, Ms. Yoakum sign this." Then the following colloquy occurred:

COURT: You said ex-wife. What is [Jenny's] relationship to [Henry].

COUNSEL: She was one of [Henry's] wives. Ex-wife now. But she was there at the time - -

COURT: Was she married to him at the time or was she divorced from him at the time.

COUNSEL: I believe she was married to him at the time I'm thinking. Well, . . . I'm not sure, Your Honor. I can't remember when they got a divorced [sic]. They may have been divorced at the time. I don't want to tell you one way or the other. I know she is divorced now. I can't recall if they were married or not at the time.

COURT: Okay.

COUNSEL: But if the [c]ourt wants me to, I can go find out.

COURT: No, sir. Do you have anything else you want to offer in opposition to this summary judgment motion [counsel]?

COUNSEL: No, Your Honor.

Then the court stated, "Where I'm troubled and where I would have liked to have seen something else, I have a witness affidavit on the typewritten will or I have a typewritten will that was witnessed allegedly by [Henry's] then wife now ex-wife while her husband would be basically the sole beneficiary under that will." The court was also concerned that Jenny was the only witness in support of the holographic will. According to the court, "she would

4

have benefitted from her husband having inherited thereunder. . . ."

¶8.     After the hearing, the court entered an order granting summary judgment in favor of Mary. The court held that Henry did not make an adequate showing that the 2004 wills had been signed and executed by Yoakum. Finding no genuine issue of material fact, the court dismissed Henry's counterclaim with prejudice.[3]  Now Henry appeals.

## STANDARD OF REVIEW

¶9.     The grant or denial of summary judgment is reviewed de novo. *Wright v. R.M. Smith Investments L.P.*, 210 So. 3d 555, 557 (¶6) (Miss. Ct. App. 2016). "Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Id*. (quoting *Thrash v. Deutsch, Kerrigan & Styles LLP*, 183 So. 3d 838, 842 (¶10) (Miss. 2016)). "The moving party bears the burden to show that no genuine issue of material fact exists, and the evidence must be viewed in the light most favorable to the nonmovant." *Id*. at 557-58 (¶6).

## DISCUSSION

¶10.    We must decide whether the court erred by granting summary judgment. As stated, "[t]he party requesting summary judgment bears the burden of demonstrating that no genuine issue of material fact exists." *Bolden v. Murray*, 97 So. 3d 710, 714 (¶15) (Miss. Ct. App. 2012) (quoting *Buckel v. Chaney*, 47 So. 3d 148, 153 (¶10) (Miss. 2010)). However, "[t]he

---

[3] Subsequently, Henry filed a motion and a corrected motion for Rule 54(b) certification, and Mary filed an answer. Then the court entered an amended final order.

opponent to summary judgment carries 'a burden of rebuttal, one which arises after the moving party has satisfied the burden of proof that no genuine issue of material fact exists.'" *Miller v. Meyers*, 38 So. 3d 648, 651 (¶13) (Miss. Ct. App. 2010) (quoting *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 485 (¶16) (Miss. 2006)). "[A]n opponent to a motion for summary judgment 'must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial.'" *Id.* (quoting *McMichael v. Nu-Way Steel & Supply Inc.*, 563 So. 2d 1371, 1375 (Miss. 1990)).

¶11. In her motion for summary judgment, Mary asserted that the 2004 wills had not been executed in compliance with Mississippi Code Annotated section 91-5-1 (Rev. 2018). This section provides:

> Every person eighteen (18) years of age or older, being of sound and disposing mind, shall have power, by last will and testament, or codicil in writing, to devise all the estate, right, title and interest in possession, reversion, or remainder, which he or she hath, or at the time of his or her death shall have, of, in, or to lands, tenements, hereditaments, or annuities, or rents charged upon or issuing out of them, or goods and chattels, and personal estate of any description whatever, provided such last will and testament, or codicil, be signed by the testator or testatrix, or by some other person in his or her presence and by his or her express direction. Moreover, if not wholly written and subscribed by himself or herself, it shall be attested by two (2) or more credible witnesses in the presence of the testator or testatrix.

Miss. Code Ann. § 91-5-1. At the hearing on her motion, Mary asserted that Yoakum's signatures had been forged. In support of her motion, Mary attached her affidavit and a report from her expert witness. In her affidavit, Mary stated that she was familiar with Yoakum's signature and that in her opinion the signatures on the 2004 wills had been forged.

6

Likewise, Mary's expert compared the 2004 wills to "[h]andwriting standard identified as known handwriting from [Yoakum]," and it was his opinion that the signatures on the wills were not written by the author of the known handwriting standards.

¶12. In response, Henry asserted that Jenny's affidavit created a genuine issue of material fact. In her Affidavit of Subscribing Witness, Jenny stated that Yoakum signed the November 22, 2004 will in her presence and in the presence of another subscribing witness. Additionally, Jenny filed the Affidavit Proving Holographic Will. She stated that she was familiar with Yoakum's handwriting and signature and that the will was written in Yoakum's handwriting and bore her signature.

¶13. The court expressed concern that Jenny was, at some point, married to Henry. Assuming that they were in fact married when Jenny subscribed the will, the court opined that "she would have benefitted from her husband having inherited [under the wills] . . . ."

¶14. Mississippi Code Annotated section 91-5-9 (Rev. 2018), which governs devises or bequests to witnesses, provides:

> If any person be a subscribing witness to a will wherein any devise or bequest is made to him and the will cannot otherwise be proven, such devise or bequest shall be void, and the witness shall be competent as to the residue of the will as if a devise or bequest had not been made to him, and he may be compelled to testify. If such witness would have been entitled to any share of the testator's estate in case the will were not established, then so much of such share shall be saved to the witness as shall not exceed the value of the devise or bequest made to him in the will.

Miss. Code Ann. § 91-5-9. Although Henry was a named beneficiary in the 2004 wills, Jenny was not. Furthermore, in her affidavit, Jenny stated that she had no interest in

Yoakum's estate. And at the time of the hearing, Henry and Jenny were divorced. While Jenny may have been married to Henry when she subscribed the 2004 will, section 91-5-9 does not prohibit the spouse of a beneficiary from being a subscribing witness. Additionally, our supreme court has held that "a husband or wife of a beneficiary under a will is a competent attesting witness to the will." *Gore v. Dace*, 157 Miss. 221, 127 So. 901, 902 (1930); Robert Weems, Mississippi Practice Series: Wills and Administration of Estates in Mississippi § 4:9, at 121-22 (3d ed. 2003). Therefore, we find that Jenny's affidavit created a genuine issue of material fact. Accordingly, we reverse and remand for further proceedings. Because this came before us on the grant of a summary judgment, we make no decision on any issue in this contested-will case other than the propriety of the granting of summary judgment.

¶15. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**