# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00931-COA

LEMOND ROBERTSON, AS GUARDIAN AND NEXT FRIEND OF A.R., A MINOR

APPELLANT

v.

HOUSTON, MISSISSIPPI PUBLIC SCHOOL DISTRICT

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/20/2020 |
| TRIAL JUDGE: | HON. JOHN KELLY LUTHER |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | MARK TYLER JACKSON |
| ATTORNEYS FOR APPELLEE: | WALTER WILLIAM DUKES |
| | MARA MICHÈLE LESIEUR JOFFE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 12/14/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     Lemond Robertson, as the guardian and next friend of A.R.,[1] a minor, sued the Houston, Mississippi Public School District (the School District) under the Mississippi Tort Claims Act (MTCA).  Following a hearing on the School District's motion for summary judgment, the Chickasaw County Circuit Court found that no genuine issues of material fact existed to show the School District had "breached its ministerial dut[ies]" or "failed to use ordinary care and take reasonable steps to minimize foreseeable risks to [A.R.]."  The circuit

_____

[1] We use initials to protect the privacy of the minors involved in this matter.

court therefore granted the school district's summary judgment motion. Robertson appeals and argues the circuit court erred because genuine issues of material fact exist. Finding no error, we affirm.

**FACTS**

¶2. A.R. attended Houston High School. Around 7 a.m. on May 5, 2017, A.R.'s mother called the high school and spoke to a school secretary. A.R.'s mother stated she had just learned from a fellow parent that another student, T.B., had allegedly expressed an intention to harm A.R. once both girls arrived at school that day. After receiving the phone call from A.R.'s mother, the secretary immediately passed along the information to Assistant Principal Robert Winters, who then notified Principal Jason Cook of the alleged threat.

¶3. When A.R.'s school bus arrived at school around 7:15 a.m., she found Cook, Winters, and Coach Chris Pettit waiting for her as she exited the bus. Pettit escorted A.R. away from the other students gathered in the commons area and into the gym. When T.B.'s bus arrived at the high school later that morning, Cook and Winters met T.B. as she exited the bus. The two administrators escorted T.B. into the high school with the intention of taking her to the front office to determine whether T.B. had threatened A.R. As the three entered the commons area, however, T.B. suddenly broke into a run. Winters attempted to restrain T.B., but she broke away from his grasp and ran into the gym.

¶4. With Winters and Cook in pursuit, T.B. chased A.R. into the gym's bleachers. A.R. stated that as she began to run down the bleacher stairs, she saw Pettit and another teacher, Carolyn Matthews, standing at the bottom of the stairs. According to A.R., Matthews told

her to jump down the last few remaining steps to the gym floor. Pettit testified that he, however, did not recall Matthews being inside the gym, much less standing beside him, when the incident occurred, and he never heard any adult in the gym tell A.R. to run into the bleachers or to jump down from the bleacher stairs to the floor. Matthews testified that she was inside the school when the incident occurred but was not standing at the bottom of the bleacher stairs. Matthews also stated that she never instructed A.R. to jump down from the bleacher's landing to the gym floor.

¶5.     Upon jumping down the last several steps of the bleachers and landing on the gym floor, A.R. experienced pain in her right knee. Winters, Cook, and Pettit then managed to detain T.B. until police officers arrived. Following the incident, A.R. sought medical treatment for her right knee. She later underwent surgery on the knee.

¶6.     On September 19, 2018, Robertson, as A.R.'s guardian and next friend, filed a lawsuit against the School District. Robertson alleged that the School District had acted negligently under Mississippi Code Annotated section 37-9-69 (Rev. 2019) by failing to (1) "hold [T.B.] to strict account for disorderly conduct at the school"; (2) "use ordinary care and take reasonable steps to minimize foreseeable risks to [A.R.]"; and (3) "provide a safe school environment for [A.R.]." Following discovery, the School District moved for summary judgment. After a hearing, the circuit court entered a judgment on the School District's motion. The circuit court found that the only disputed fact was whether Matthews had told A.R. to jump down the bleacher stairs to the gym floor. Even assuming that fact to be true, however, the circuit court concluded that no genuine issues of material fact existed to show

3

that the School District had (1) "breached its ministerial duty . . . to hold [T.B.] to strict account for disorderly conduct"; (2) "breached its ministerial duty . . . to prevent bullying or harassing behavior by [T.B.]"; or (3) "failed to use ordinary care and take reasonable steps to minimize foreseeable risks to [A.R.]." The circuit court therefore granted the School District's summary judgment motion. Aggrieved, Robertson appeals.

## STANDARD OF REVIEW

¶7. "We review an order granting summary judgment de novo." *Smith v. Baker*, 321 So. 3d 575, 581 (¶18) (Miss. Ct. App. 2021). Viewing the evidence in the light most favorable to the nonmovant, we recognize that "[s]ummary judgment is proper if there is no genuine issue of material fact[,] and the moving party is entitled to a judgment as a matter of law." *Wood v. Reynolds*, 316 So. 3d 208, 211 (¶15) (Miss. Ct. App. 2021) (quoting *Wright v. R.M. Smith Invs. L.P.*, 210 So. 3d 555, 557 (¶6) (Miss. Ct. App. 2016)). The movant "bears the burden of demonstrating that no genuine issue of material fact exists." *Id.* at (¶17) (quoting *Bolden v. Murray*, 97 So. 3d 710, 714 (¶15) (Miss. Ct. App. 2012)). Where the movant demonstrates that no genuine issue of material fact exists, the nonmoving party "must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial." *Id.* (quoting *Miller v. Myers*, 38 So. 3d 648, 651 (¶13) (Miss. Ct. App. 2010)). A "genuine" dispute arises when "the evidence is such that a reasonable jury could return a verdict for the nonmovant." *Id.* (quoting *Brown Lakeland Props. v. Renasant Bank*, 243 So. 3d 784, 790 (¶17) (Miss. Ct. App. 2018)).

## DISCUSSION

¶8.     Robertson asserts that the School District breached its ministerial duties to A.R. under section 37-9-69 and that as a direct result of the breach, A.R. suffered harm. According to Robertson, genuine issues of material fact existed as to whether the School District complied with its duty under section 37-9-69 to (1) "use[] ordinary care and [take] reasonable steps to minimize foreseeable risks to [A.R.]"; (2) "exercise[] 'reasonable efforts' in supervising the students involved in [the subject] incident"; and (3) "[hold T.B.] to strict account for disorderly conduct at the school." Robertson contends that these disputes of material fact precluded summary judgment.

¶9.     As this Court has previously explained,

> The MTCA provides the exclusive civil remedy against a governmental entity for acts or omissions which give rise to a suit. Any tort claim filed against a governmental entity or its employee shall be brought only under the MTCA, and a school district is a governmental entity under the MTCA. Under the MTCA, sovereign immunity is waived for claims for money damages arising out of the torts of governmental entities and their employees, unless they are explicitly exempted from this waiver under Section 11-46-9(1) of the Mississippi Code. Mississippi Code Annotated section 11-46-9(1) [(Rev. 2019)] exempts discretionary but not ministerial duties from immunity.
>     A ministerial duty is a duty that is positively designated by statute, ordinance, or regulation. Section 37-9-69 states that each superintendent, principal[,] and teacher in the public schools of this state shall hold the pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess. The Mississippi Supreme Court has found that [s]ection 37-9-69 . . . imposes upon school districts a ministerial duty to use ordinary care and to take reasonable steps to minimize foreseeable risks to students thereby providing a safe school environment. The school is not an insurer of the safety of pupils, but has the duty of exercising ordinary care, of reasonable prudence, or of acting as a reasonable person would act under similar circumstances.

*J.E. v. Jackson Pub. Sch. Dist.*, 264 So. 3d 786, 791 (¶¶12-13) (Miss. Ct. App. 2018) (citations and internal quotation marks omitted).

¶10. Although the circuit court recognized the School District's ministerial duty under section 37-9-69 to hold students to strict accountability for disorderly conduct at school, the court concluded that no genuine issue of material fact existed to show a breach of this duty. The circuit court further concluded that no genuine issues of material fact existed to show that the School District either failed to use ordinary care in its actions or failed to take reasonable steps to minimize the foreseeable risks to A.R.

¶11. A.R. admitted that prior to her mother's phone call to the high school on the morning of May 5, 2017, the school administration had no reason to know about or suspect a potential threat against her. A.R. stated that she and T.B. had been friends and that T.B. had never before threatened or attempted to harm her. Upon learning about the potential threat from another parent after A.R. had departed for school, A.R.'s mother telephoned the school and spoke to a secretary, who immediately informed the assistant principal, Winters, about the situation. Winters testified that he then promptly passed along the information to the principal, Cook. With only about fifteen minutes until A.R.'s bus arrived at the high school, Cook and Winters formulated a plan to address the still-developing situation. Winters testified that he and Cook planned to escort A.R. and T.B. to different areas of the school and to question the two students separately about the alleged threat.

¶12. Along with Pettit, Cook and Winters met A.R. as she exited her school bus. Pettit then escorted A.R. away from the students gathered in the commons area and to the largely unoccupied gym. Cook and Winters subsequently met T.B. when her bus arrived at school, and they attempted to escort her to the front office. Winters testified that in accordance with

their safety training, he and Cook did not restrain T.B. as they entered the school. Winters stated the school personnel had been trained to not restrain a student until a definite threat to either the student or others had been identified. Because the alleged threat had not yet been verified, Winters and Cook chose to walk on either side of T.B. but did not restrain her at that time.

¶13. As the two administrators and T.B. entered the school, T.B. suddenly ran toward the gym. At that point, Winters attempted—unsuccessfully—to restrain T.B., who entered the gym and headed toward A.R. When A.R. saw T.B. approach, she moved onto the bleachers. A.R. acknowledged that she voluntarily went into the bleachers and that no one ever instructed her to do so. Although A.R. stated that Matthews told her to jump from the bleacher landing, she agreed that no one forced her to jump down and that she could have simply continued to descend the last few remaining steps to the gym floor, where she saw Pettit waiting to intercept T.B. A.R. also acknowledged that she was already descending the bleacher stairs when she jumped down the last few remaining steps.

¶14. Upon review, we find no error in the circuit court's grant of summary judgment to the School District. Even after viewing the evidence in the light most favorable to Robertson, we can find nothing to show that the School District either failed to provide A.R. with a safe school environment or failed to use ordinary care and take reasonable steps to minimize foreseeable risks to A.R. As discussed, a "school is not an insurer of the safety of pupils, but has the duty of exercising ordinary care, of reasonable prudence, or of acting as a reasonable person would act under similar circumstances." *J.E.*, 264 So. 3d at 791 (¶13) (quoting

7

*Summers ex rel. Dawson v. St. Andrew's Episcopal Sch. Inc.*, 759 So. 2d 1203, 1213 (¶40) (Miss. 2000)). Here, our review of the record reveals no evidence to demonstrate that the School District negligently responded to the phone call from A.R.'s mother. Rather, the undisputed evidence establishes that in the limited time available to them, Cook and Winters took reasonable steps to address the potential threat to A.R. Because no genuine issue of material fact exists to show that the School District breached its duty to hold students to strict accountability for disorderly conduct on campus, we conclude this assignment of error lacks merit.

## CONCLUSION

¶15. Upon review, we find no genuine issue of material fact that would preclude the circuit court's grant of summary judgment to the School District. We therefore affirm the circuit court's judgment.

¶16. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE AND LAWRENCE, JJ., CONCUR. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, McDONALD, McCARTY AND EMFINGER, JJ.**

**CARLTON, P.J., DISSENTING:**

¶17. I dissent because I find that there are genuine issues of material fact (1) whether the School District was negligent in the way in which it handled escorting the two quarreling girls into the school that resulted in T.B. pursuing A.R. in the school gym and thereby negligently creating an unsafe environment, and (2) whether Matthews negligently told A.R. to jump down the last remaining gymnasium steps when A.R. was trying to evade T.B. I

8

would reverse the trial court's grant of summary judgment in the School District's favor and remand this case for further proceedings.

¶18. To review the applicable law, section 11-46-9(1)(b) of the MTCA provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [a]rising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid.

Miss. Code Ann. § 11-46-9(1)(b) (Rev. 2019).

¶19. In this case, the applicable statutory provision is Mississippi Code Annotated section 37-9-69 (Rev. 2019), which provides that it is "the duty of each superintendent, principal and teacher in the public schools of this state to . . . hold the pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess." As the majority acknowledges, "[s]ection 37-9-69 . . . imposes upon school districts a ministerial duty to 'use ordinary care and to take reasonable steps to minimize foreseeable risks to students thereby providing a safe school environment.'" *J.E. v. Jackson Pub. Sch. Dist.*, 264 So. 3d 786, 791 (¶¶12-13) (Miss. Ct. App. 2018) (quoting *Smith ex rel. Smith v. Leake Cnty. Sch. Dist.*, 195 So. 3d 771, 776 (¶14) (Miss. 2016)).

¶20. In the instant case, Assistant Principal Winters and Principal Cook admit they were made aware that a threat had been made by T.B. against A.R. Although several other teachers were assigned to "duty posts" within the school's common area to ensure the students' safety as they entered the school, including Adam Gentry, Carolyn Matthews, and Chris Pettit, there is no indication in the record that Gentry or Matthews were made aware

9

of the threat made by T.B. to A.R. or that Pettit was aware of the extent of the threat against A.R. Additionally, the record reflects that neither Gentry nor Matthews was aware of any plan to ensure A.R.'s safety, and Pettit said in his deposition that he was "just kind of told what we were going to try to do, and that was it" with respect to any "plan" to keep T.B. away from A.R. at school that morning.

¶21. Thus, rather than alerting the other teachers of the threatened harm to A.R., or fully explaining the circumstances to Pettit, Winters and Cook attempted to implement their plan to protect A.R. primarily on their own. The plan failed. A.R. was placed in an open gym (without Pettit, Winters, or Cook remaining as monitors), T.B. was somehow aware that A.R. was in the gym, and as Winters and Cook accompanied T.B. into school, T.B. darted away from them in pursuit of A.R. Regarding the circumstances that developed in the gym when T.B. was pursuing A.R., A.R. said in her deposition that Matthews told her to jump down the last remaining gym steps, and so she did, as she "had no clue" where T.B. was or what was going on at that point. Although Matthews said in her deposition that she did not instruct A.R. to jump, in reviewing a motion for summary judgment, A.R., the nonmovant, "is entitled to the benefit of all reasonable favorable inferences that may be drawn from the record." *Irwin-Giles v. Panola County*, 253 So. 3d 922, 925 (¶10) (Miss. Ct. App. 2018).

¶22. Viewing the evidence in the light most favorable to the nonmovant, and allowing A.R. all reasonable, favorable inferences, I find that these circumstances create genuine issues of material fact as to the reasonableness of the actions of Winters, Cook, and Matthews in preventing the foreseeable risks of injury to A.R. in this case. For these reasons, I

10

respectfully dissent and would remand this case to allow A.R. to pursue her negligence claims pursuant to section 37-9-69 against the School District.

**WESTBROOKS, McDONALD, McCARTY AND EMFINGER, JJ., JOIN THIS OPINION.**

11