# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-01602-SCT

*KEVIN BUCKEL*

*v.*

*MIKE CHANEY, COMMISSIONER OF INSURANCE*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/02/2009 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | EDWARD GIBSON |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LOWRY CHRISTOPHER LOMAX |
| | LISA LOUISE COLONIAS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 11/04/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Kevin Buckel has appealed to this Court from an order granting summary judgment entered by the Chancery Court for the First Judicial District of Hinds County. Buckel asserts that the chancery court inappropriately assigned evidentiary value to an affidavit in support of the motion for summary judgment filed by the Mississippi Commissioner of Insurance and that the chancery court erred in its finding that Buckel's rebuttal evidence was insufficient to avoid a grant of summary judgment. Buckel further contends that the chancery court erred

by holding that his public-records request was improper under the Mississippi Public Records Act and that Mississippi Code Section 83-5-209(7) (Rev. 1999) exempted from disclosure the records Buckel had requested. Finding Buckel's arguments to be unpersuasive and the chancellor's findings to be firmly rooted in the law, we affirm the chancery court judgment.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. On January 4, 2009, Buckel submitted a public-records request under the Mississippi Public Records Act to the Mississippi Insurance Department[1] ("MID"):

> This is to request any data in the possession of MID concerning homeowner insurance claims as a result of Hurricane Katrina, excluding Wind Pool and Flood Claims. Specifically, I would like to know the (1) total number of homeowner claims filed after the storm; (2) the total "insured amount claimed" filed by homeowners after the storm; (3) the total amount paid out on those homeowner claims after the storm; (4) the total amount "not paid" on the homeowner claims after the storm. If this information is not available, I respectfully request your office compile this information for public consumption from the insurance companies that received homeowner claims regulated by MID as a result of Hurricane Katrina.

Having not received a response to this request by January 16, 2009, Buckel again wrote to MID, expressing his desire to appeal MID's alleged failure to respond to his earlier request. However, MID did timely respond by letter on January 26, 2009, under the provisions of Mississippi Code Section 25-61-5 (Rev. 2010), and informed Buckel that MID had searched for the requested documents but did not possess them. MID expressed further to Buckel that the Mississippi Public Records Act required only the production of existing records in its

---

[1]The Mississippi Insurance Department (MID) is sometimes referred to herein as the Mississippi Department of Insurance.

2

possession and did not require a department to compile information. MID added that these documents, in any event, were not viewable under an exemption to the Public Records Act.

¶3.    Buckel subsequently filed *pro se* for judicial review in the Harrison County Chancery Court, and the parties agreed to transfer venue to the Hinds County Chancery Court. In his complaint, Buckel sought information not specifically set forth in his original records request. For instance, Buckel requested information relating to MID's release on October 29, 2008, of its findings on the State Farm Conduct Exam.[2]  Buckel specifically requested "a copy of [the] claim information used by the examination team" in compiling the State Farm Conduct Exam. He also requested "any documentation used by former Commissioner [George] Dale that resulted in the information published" in press releases occurring on January 30, 2006, and November 21, 2005, as well as in a news story in which Commissioner Dale was quoted on June 22, 2006.  The press releases[3] and news story[4] contained detailed

---

[2]On October 19, 2006, as a result of controversy concerning the handling of claims by State Farm Insurance Company, MID advised State Farm that MID was assembling an examination team "to commence immediately to investigate how State Farm treated its policyholders who had filed claims as a result of Hurricane Katrina." The examination was "to investigate the handling of homeowner claims in the lower six counties of Mississippi . . . ."

[3]The January 30, 2006, press release stated in part: "Some 187,473 claims have been filed in Jackson, Harrison, Hancock, Stone, George, and Pearl River Counties. In Jackson County there have been over 45,000 claims filed and over $485 million in claims paid . . . ." The November 21, 2005, press release contained a similar report, updated by the 2006 press release.

[4]The news story appeared in the Stone County newspaper on June 22, 2006: "There have been 5,244 property insurance claims filed in Stone County because of Hurricanes Katrina and Rita, and as of June 6, $62,852,544 have been paid out by insurance companies

3

information regarding the number of claims filed in specific counties and total amounts in claims paid.

¶4.     After the Commissioner had answered and pleaded his affirmative defenses, the Commissioner filed a motion for summary judgment.  Buckel timely responded, and the chancellor conducted a summary judgment hearing. The Commissioner put forth two arguments in support of his motion: (1) that MID did not possess the public records initially requested; and (2) that the public-records request failed to include documents underlying the State Farm Market Conduct Report and that these documents were exempt under Mississippi Code Section 83-5-209(7) (Rev. 1999).

¶5.     In support of his first argument, the Commissioner provided an affidavit of MID employee Donna Cromeans in which she swore based on personal knowledge that she "undertook and supervised a diligent search of the files and records held by MID" and that the records requested by Buckel "are not in the possession, custody or control of" MID. Buckel, however, has argued for the first time on appeal that the chancellor erred by finding evidentiary value in this affidavit, because Cromeans was an interested witness.

¶6.     In response to the Commissioner's denial of having possession of the records requested, Buckel presented two arguments at the summary judgment hearing: (1) that the two press releases and single news story, relating to homeowners' claims filed and paid after

---

in settlements, according to the Mississippi Department of Insurance . . . ."

4

Katrina, contained "exact detailed information,"[5] evidencing that MID was "compiling" this information, and, therefore, was in possession of the information requested and (2) that the State Farm Market Conduct Report indicated that MID was in possession of Buckel's requested documents because the Report stated that Commissioner Dale had subpoenaed 43,000 files from State Farm.[6] Buckel also contended that his initial records request did include the information underlying the Market Conduct Report, although not specifically identified, and that the Mississippi Public Records Act did not exempt this underlying statistical information.

¶7. On September 2, 2009, the chancellor entered an order granting summary judgment, holding that (1) no genuine issue of material fact existed to support Buckel's claims; (2) neither the Commissioner nor MID possessed the records requested by Buckel; and (3) the documents demanded by Buckel in his complaint were not properly requested and were nonetheless protected by Mississippi Code Section 83-5-209(7) (Rev. 1999), as further interpreted *in pari materia* by Mississippi Department of Insurance (MDOI) Regulation 83-1.6(b)(2).

---

[5]With regard to the origin of these exact numbers, Commissioner Chaney contended that former Commissioner Dale, not a party, and MID were probably "simply translating numbers provided by the National Association of Insurance Commissioners."

[6]The Commissioner argued that the Report written by the examination team, which MID hired as contractors to perform the examination of State Farm, did not indicate that the examiners presented this underlying data to the Commissioner.

¶8.     On appeal, Buckel seeks to reverse this judgment and have his case remanded to the chancery court for further proceedings.  For the sake of today's discussion, we combine and restate the critical issues before us.

**DISCUSSION**

¶9.     The standard of review of a trial court's grant of a motion for summary judgment is *de novo*. ***Whitaker v. Limeco Corp.***, 32 So. 3d 429, 433-34 (Miss. 2010) (citing ***Burleson v. Lathem***, 968 So. 2d 930, 932 (Miss. 2007) (citations omitted)).  Accordingly, this Court must employ "a factual review tantamount to that of the trial court when considering evidentiary matters in the record." ***Moss v. Batesville Casket Co.***, 935 So. 2d 393, 397 (Miss. 2006) (quoting ***Williams v. Bennett***, 921 So. 2d 1269, 1272 (Miss. 2006)).

### I.      WHETHER THE TRIAL COURT ERRED IN GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT.

¶10.     The party requesting summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. ***Watson Quality Ford, Inc. v. Casanova***, 999 So. 2d 830, 833 (Miss. 2008) (citing ***Estate of Johnson v. Chatelain***, 943 So. 2d 684, 686 (Miss. 2006)).  When the moving party has supported its motion in accordance with Mississippi Rule of Civil Procedure 56, "an adverse party may not rest upon the mere allegations or denials of his pleadings; his response . . . must set forth specific facts showing there is a genuine issue for trial."  Miss. R. Civ. P. 56(e).  Moreover, summary judgment "is appropriate when the non-moving party has failed to 'make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the

6

burden of proof at trial.'" *Watson Quality Ford, Inc.*, 999 So. 2d at 832 (quoting *Bullard v. Guardian Life Ins. Co.*, 941 So. 2d 812, 814 (Miss. 2006)). "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Brown v. Credit Ctr., Inc.*, 444 So. 2d 358, 362 (Miss. 1983) (citations omitted). "Pro se parties should be held to the same rules of procedure and substantive law as represented parties." *Dethlefs v. Beau Maison Dev. Corp*., 511 So. 2d 112, 118 (Miss. 1987).

¶11.    Buckel contends that the chancellor erred in granting summary judgment for two reasons. First, the chancellor incorrectly assigned evidentiary value to the affidavit of an interested witness. Second, the two press releases, the news story, and the Market Conduct Report presented in response to the Commissioner's motion for summary judgment created a genuine issue of material fact as to whether the Commissioner possessed the documents Buckel had requested.

### A. Buckel's Argument against Donna Cromeans's Affidavit.

¶12.    To satisfy his burden as the movant for summary judgment, the Commissioner had "the burden of demonstrating there is no genuine issue of material fact . . . ." *Buchanan v. Ameristar Casino Vicksburg, Inc.*, 957 So. 2d 969, 975 (Miss. 2007) (citations omitted). The Commissioner sought to establish the nonexistence of an element essential to Buckel's case. *Watson Quality Ford, Inc.*, 999 So. 2d at 833 (citing *Bullard*, 941 So. 2d at 814). Specifically, under Mississippi Code Section 25-61-3(b) (Rev. 2010), the Commissioner attempted to set forth facts showing that MID did not "possess" the public records Buckel had requested.

7

> "Public records" shall mean all books, records, papers, accounts, letters, maps, photographs, films, cards, tapes, recordings or reproductions thereof, and any other documentary materials, regardless of physical form or characteristics, having been used, being in use, or prepared, *possessed* or retained for use in the conduct, transaction or performance of any business, transaction, work, duty or function of any public body, or required to be maintained by any public body.

Miss. Code Ann. § 25-61-3(b) (Rev. 2010) (emphasis added). The Commissioner provided Cromeans's affidavit in support of the motion for summary judgment. Cromeans's affidavit stated that she had searched diligently, but MID did not possess the documents Buckel had requested.

¶13.    Buckel argues for the first time on appeal that Cromeans's affidavit in support of the Commissioner's motion for summary judgment should not have been assigned evidentiary value. He states in his brief that "the Chancellor clearly awarded some credence to the affidavit of the commissioner, finding that MID was not in possession of the information which Buckel sought." Citing this alleged error by the chancellor, Buckel argues that the Commissioner failed to prove that no genuine issue of material fact existed.

¶14.    Buckel, however, failed to contest this affidavit in the trial court and, therefore, may not contest it for the first time on appeal. *Bd. of Educ. of Calhoun County v. Warner*, 853 So. 2d 1159, 1164 (Miss. 2003) (citing *Brown*, 444 So. 2d at 365 (Miss 1983)). In *Warner*, this Court refused to allow a party to attack an affidavit for the first time on appeal: "Where the party against whom a motion for summary judgment is made wishes to attack one or more of the affidavits upon which the motion is based, he **must** file in the trial court a **motion to strike** the affidavit." *Id.* Failing to attack the affidavit constitutes waiver of any

8

objection to the affidavit. ***Cont'l Ins. Co. v. Transamerica Rental Fin. Corp.***, 748 So. 2d 725, 731 (Miss. 1999).

¶15.    Assuming *arguendo* that this Court were to allow Buckel to contest this affidavit on appeal, Buckel still would not be entitled to relief. This Court has articulated its standard for the admissibility of affidavits in accordance with Mississippi Rule of Civil Procedure 56(e): "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein." ***Stuckey v. The Provident Bank***, 912 So. 2d 859, 868 (¶20) (Miss. 2005). However, "[a] conclusory, self-serving affidavit, unsupported by material facts  relevant to the proposition at issue, is insufficient as a basis to grant summary judgment." ***Dalton v. Cellular S., Inc.***, 20 So. 3d 1227, 1233-34 (Miss. 2009).

¶16.    Here, the chancellor did not err in allowing and considering Cromeans's affidavit. Her affidavit was based on personal knowledge and was not conclusory.  She did not simply suppose that MID did not possess the records.  The affidavit clearly stated she had conducted a search at MID for the records requested and had supervised others in the search as well. This testimony as to the absence of the records at MID was material to this case, and Buckel has presented no evidence that the affidavit is self-serving, except for the fact that Cromeans worked at MID.

¶17.    Nonetheless, Buckel argues that an interested witness's affidavit should not be considered under United States Supreme Court precedent. ***Reeves v. Sanderson Plumbing***

*Prods., Inc.*, 530 U.S. 133, 150-51, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (citations omitted). In *Reeves*, the Supreme Court stated that when making determinations regarding summary judgment, courts "should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* Based on *Reeves*, Buckel asserts that Cromeans was an interested witness, and thus her affidavit should not have been considered by the chancellor in determining the issue of whether to grant summary judgment.

¶18. This Court has not specifically adopted the *Reeves* test, instead relying on its own well-articulated standards for determining the admissibility of affidavits. *Dalton*, 20 So. 3d at 1233-34. *Reeves* dealt with employment discrimination, not the dissemination of public records. Moreover, as the Commissioner correctly argues, without the testimony of his employees, the other avenues by which to prove the existence or nonexistence of documents would be costly and perhaps also subject to this same interested-party analysis.

¶19. In light of these problems, when following the *Reeves* disinterested-witness requirement, the Fifth Circuit, among other courts, has not strictly applied this requirement:

> [T]he definition of an interested witness cannot be so broad as to require us to disregard testimony from a company's agents regarding the company's reasons for discharging an employee. As the Seventh Circuit noted in *Traylor v. Brown, et al.*, 295 F.3d 783 (7th Cir. 2002), to so hold would foreclose the possibility of summary judgment for employers, who almost invariably must rely on testimony of their agents to explain why the disputed action was taken.

10

*Sanstad v. CB Richard Ellis, Inc.*, 309 F. 3d 893, 898 (5th Cir. 2002). The Fifth Circuit has also held that a "decision-maker" does not constitute an interested person "without further evidence" of the witness's interest. *Wiley v. Am. Elec. Power Serv. Corp.*, 287 Fed. Appx. 335, 339 (5th Cir. 2008).

¶20. This Court refuses to apply *Reeves* in the context of today's case. Buckel has not provided "further evidence" of Cromeans's interest. She is a regular employee, not a decision-maker. Thus, we find the chancellor did not err in assigning evidentiary value to Cromeans's affidavit and in finding that the Commissioner had satisfied his burden as the party moving for summary judgment.

### B. Buckel's Evidence in Response to the Commissioner's Motion.

¶21. In response to the Commissioner's motion for summary judgment, supported by Cromeans's affidavit, Buckel argues that MID's Market Conduct Report created a reasonable inference that MID was in possession of the public records he had requested relating to claims paid and filed. He also points to Commissioner Dale's press releases and news story.

### 1. Market Conduct Report

¶22. Buckel asserts the State Farm Market Conduct Report indicated that MID was in possession of the requested documents because the Report stated that Commissioner Dale had subpoenaed 43,000 files from State Farm. Buckel, however, overstates the limited evidentiary value of the Market Conduct Report.

¶23. Buckel contends that the Report stated that MID had "requested" the claims information he sought and had in fact received this information "provided" by State Farm.

11

Yet, nowhere in the Report did it specifically state that MID had requested this information. The Report stated that the examiners, whom MID had contracted to gather data and to complete the Report, had requested and received this information and that "[t]his examination was performed by examiners, adjusters, and attorneys appointed by the Commissioner of Insurance [ . . . ] in accordance with his statutory authority." While Buckel also argues that a MID employee, Jimmy Blissett, was the examiner in charge, Buckel offers no proof that Blissett was an actual employee of MID, rather than an independent contractor.

¶24.    While there is no doubt that the contractors/examiners had this data relating to claims filed and paid, there is no evidence that MID possessed the information sought in Buckel's records request. The Market Conduct Report does not indicate with any certainty that MID possessed the data underlying this Report. Nowhere does the Report state that MID was, at any time, in possession of this underlying data or storing this information. MID did not compile information for the Report. At best, the Report creates an inference that because MID contracted to have the Report completed, then MID also had/stored the information underlying the Report. However, this inference, without more, fails to create a genuine issue of material fact as to whether the Commissioner has ever possessed the documents. Buckel has not brought forth "probative evidence" legally sufficient to make apparent "the existence of a triable issue of fact." *Smith v. First Fed. Sav. & Loan Assoc. of Grenada*, 460 So. 2d 786, 792 (Miss. 1984) (quoting *Union Planters Nat'l Leasing, Inc. v. Woods*, 687 F.2d 117, 119 (5th Cir. 1982)). To create a genuine issue of material fact as to whether MID had possession of the requested information, Buckel certainly could have conducted more

12

discovery via the examiners, former Commissioner Dale, and other persons, but failed to do so.

### 2. Press Releases & News Story

¶25.   Buckel also points to the press releases and the news story in which former Commissioner Dale updated the public on the number of claims filed and paid.  Buckel argues that "it is simply not credible to believe that the former Commissioner either guesses at the [exact] figures or recalled the figures from memory based on the data provided from a third party source." Viewing this evidence in the light most favorable to Buckel, this evidence does create an inference that Commissioner Dale had access to the data Buckel seeks, because the press releases do provide exact numbers of claims filed and paid.  This evidence, however, does not create a reasonable inference that, years later, MID, under a new Commissioner, currently possesses the data underlying these press releases or news story. In fact, to draw the conclusion that MID possesses the data, one would have to pile inference upon inference.  Specifically, one has to infer that Commissioner Dale possessed the data and then infer through Commissioner Dale's possession that MID must have possessed and currently possesses the information sought.  Importantly, at the summary judgment hearing, Buckel even appreciated that MID might not have this material he had requested and conceded that MID had no responsibility to compile this information on claims.

¶26.   Nonetheless, in support of his argument that the Report, the press releases, and the news story create circumstantially a reasonable inference sufficient to withstand a summary judgment motion, Buckel argues, "[S]ummary judgment is improper when the plaintiff has

13

advanced enough circumstantial evidence to take [his] claims out of the realm of 'mere conjecture' and plant them in the solid ground of 'reasonable inference.'" ***Thomas v. The Great Atl. & Pac. Tea Co., Inc.***, 233 F.3d 326, 330 (5th Cir. 2000) (citing ***Snapp v. Harrison***, 699 So. 2d 567, 570 (Miss. 1997)).

¶27. From the record before us, this Court is constrained to find that Buckel has not presented circumstantial evidence sufficient for a trier of fact to find that the Commissioner possessed the documents requested. Commissioner Dale made these referenced statements more than two years before MID issued the Market Conduct Report in October of 2008 and almost three years before Buckel's request. These documents do not state that MID possessed this information and only create attenuated inferences that MID currently possesses the information compiled by the examination team. Moreover, Buckel has cast no doubt on the affidavit in support of the Commissioner's motion for summary judgment.

¶28. The law is clear that the party opposing the motion is required to bring forward significant probative evidence demonstrating the existence of a triable issue of fact. ***Brown***, 444 So. 2d at 364 (citing ***Woods***, 687 F.2d at 119). Without more supporting evidence, Buckel's theory remains merely "possible," not "probable." ***Thomas***, 233 F.3d at 330. Buckel's evidence consists of "mere general allegations" and unsupported conclusions, not "detailed and precise facts," and is not sufficient to withstand entry of summary judgment in light of Cromeans's uncontroverted affidavit. ***Brown***, 444 So. 2d at 362 (citing ***Liberty Leasing Co. v. Hillsum Sales Corp.***, 380 F.2d 1013, 1015 (5th Cir. 1967)).

14

¶29. In sum, we find no error in the chancellor's entry of summary judgment in favor of the Commissioner, because Buckel did not put forth sufficient evidence to create a reasonable inference to satisfy this element of his claim, namely that the Commissioner "possessed" the records requested under Mississippi Code Section 25-61-3(b) (Rev.2006).

## II. WHETHER THE CHANCERY COURT ERRED IN FINDING THAT BUCKEL FAILED TO MAKE A PROPER RECORDS REQUEST.

¶30. The chancellor determined that Buckel had improperly requested documents underlying the Market Conduct Report from MID under Mississippi Code Section 25-61-5, which states in part that

> [e]xcept as otherwise provided by Sections 25-61-9 and 25-61-11, all public records are hereby declared to be public property, and any person shall have the right to inspect, copy or mechanically reproduce or obtain a reproduction of any public record of a public body in *accordance with reasonable written procedures adopted by the public body* concerning the cost, time, place and method of access . . . .

Miss. Code Ann. § 25-61-5 (1)(a) (Rev. 2010) (emphasis added). Based on this provision in the Mississippi Public Records Act, the Commissioner has adopted Regulation 83-1.4(b), which states, "A request should reasonably describe the desired record. Where possible, specific information regarding dates, files, titles, file designation, etc.[,] should be supplied." MDOI Regulation 83-1.4(b), *available at* http://www.mid.state.ms.us/regulations/831reg.pdf (last visited Nov. 2, 2010).

¶31. The issue is whether Buckel's initial request for public records was sufficient to include the information relating to the Market Conduct Report, which he first mentioned in

his complaint. Buckel's initial request to MID was "for **any** records relevant to his inquiry which sought information regarding the claims made, the claims paid and the portion of claims unpaid." (Emphasis added). Buckel contends that the information in the complaint is a "subset of the records requested" and that the public policy supporting his right to view the documents should prevent his request from being refused as a matter of form. *Id.*

¶32.   By the Public Records Act, Mississippi has declared as its public policy that public records generally be made available for viewing by any member of the public. Miss. Code Ann. § 25-61-1 (Rev. 2010). Allowing access to public records is a duty of the public bodies of Mississippi. *Id.* Nonetheless, as indicated in Section 25-61-5, a public body may set forth standards by which the public requests such documents. MID requires a request to "reasonably describe the desired record" and if "possible, specific information regarding dates, files, titles, file designation, etc.[,] should be supplied." MDOI Regulation 83-1.4(b). The record indicates that Buckel did not specifically request the information underlying the Market Conduct Report until he had filed his complaint in chancery court.

¶33.   Because Buckel sought such specific information and knew the "desired record" from which the information was derived, we cannot say that the chancellor erred in finding that Buckel did not make a proper records request. Buckel easily could have described the Market Conduct Report; instead, he made a general request accompanied by an instruction for MID to compile the information he wanted. If we were to find that Buckel did make a proper request, this Court would undermine the obvious purpose of MDOI Regulation 83-1.4(b): to

16

promote the efficient production of documents by requiring persons to describe the documents requested. *Id*.

¶34. Accordingly, for the reasons stated, we find no error in the chancellor's finding that Buckel failed to make a proper records request.

### III. WHETHER THE CHANCERY COURT ERRED IN FINDING THAT THE EXAMINATION DOCUMENTS WERE EXEMPTED BY STATUTE.

¶35. This Court has clearly articulated its standards for interpreting a statute. "The most fundamental rule of statutory construction is the plain meaning rule, which provides that if a statute is not ambiguous, then this Court must apply the statute according to its terms." *State ex rel. Hood v. Madison County Bd. of Supervisors*, 873 So. 2d 85, 90 (Miss. 2004) (citing *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992)). Likewise, "[i]t is a well-settled rule of statutory construction that 'when two statutes pertain to the same subject, they must be read together in light of legislative intent.'" *Tunica County v. Hampton Co. Nat'l Sur.*, 27 So. 3d 1128, 1133 (Miss. 2009) (citing *Lenoir v. Madison County*, 641 So. 2d 1124, 1129 (Miss. 1994)).

¶36. Furthermore, under the rules of statutory construction, "repeal of statutes by implication is not favored." *Id.* at 1133 (citing *Roberts v. Miss. Republican Party State Executive Comm.*, 465 So. 2d 1050, 1051 (Miss. 1985)). Statutes "on the same subject, although in apparent conflict, should if possible be construed in harmony with each other to give effect to each." *Id.* at 1134 (citing *Miss. Gaming Comm'n v. Imperial Palace of Miss.*, 751 So. 2d 1025, 1029 (Miss. 1999) (citations omitted). Moreover, "all statutes *in pari*

17

*materia* are taken into consideration, and a legislative intent [is] deduced from a consideration as a whole." ***Id.***

¶37.   The issue of statutory interpretation before this Court is whether the Mississippi Public Records Act exempts the examination materials Buckel requested. The answer depends on this Court's interpretation of two statutes. The Mississippi Public Records Act creates an exemption for public records via subsequently enacted statutes:

> The provisions of this chapter shall not be construed to conflict with, amend, repeal or supersede any constitutional or **statutory law** or decision of a court of this state or the United States which at the time of this chapter is effective or thereafter specifically declares a public record to be confidential or privileged, or provides that a public record **shall be exempt** from the provisions of this chapter.

Miss. Code Ann. § 25-61-11 (Rev. 2010) (emphasis added).  Pursuant to this section of the Act, Mississippi Code Section 83-5-209(7) creates an exemption to the Act and grants the Commissioner discretion in determining whether to disclose examination documents:

> All working papers, recorded information, documents and copies thereof produced by, obtained by or disclosed to the commissioner or any other person ***in the course of an examination*** made under Sections 83-5-201 through 83-5-217 ***may be held*** by the commissioner as a record not required to be made public under the ***Mississippi Public Records Act***.

Miss. Code Ann. § 83-5-209(7) (Rev. 1999) (emphasis added).  Buckel argues that the Public Records Act creates two exceptions to its otherwise broad policy of allowing persons to inspect public records. He contends that the Commissioner did not raise one exception pertaining to trade secrets or proprietary information and that the second exception, cited above, is inapplicable because it only "provides a ground for withholding what is otherwise

a public record where such disclosure is **mandatorily prohibited** by another statute." (Emphasis added). Buckel contends that the exception created in Section 83-5-209(7) "describes a discretionary function" that is "clearly not envisioned . . . or permitted by the Public Records Act." In essence, Buckel takes issue with the "shall be exempt" language in the Records Act and the discretionary language in Section 83-5-209(7).

¶38.    This Court finds that the two statutes, when read together, do conflict, but are not in irreconcilable conflict, and should be harmonized, giving effect to each. "Statutes on the same subject, although in apparent conflict, should if possible be construed in harmony with each other to give effect to each." *Roberts*, 465 So. 2d at 1052. First, the two statutes conflict. The Public Records Act provides only for mandatory exemptions based on its plain language ("shall be exempt") and does not specifically provide for discretionary exemptions. Miss. Code Ann. § 25-61-11 (Rev. 2010). Second, although in apparent conflict, this Court can construe them to be harmonious and give effect to the Legislature's intent. Section 25-61-11 reserves for the Legislature a broad general right to create a new statutory exception to the Public Records Act, and Section 83-5-209(7) creates a new exception in positive words. The Legislature clearly had knowledge of the language in the Public Records Act when it drafted Section 83-5-209(7), because it specifically references the Public Records Act in that section when it grants the Commissioner discretion in determining which records to exempt. Importantly, if this Court found that the mandatory language of the Public Records Act controlled, then Section 83-5-209(7) would be repealed by implication, and

19

under the rules of statutory construction, "repeal of statutes by implication is not favored." *Tunica County*, 27 So. 3d at 1133 (citing *Roberts*, 465 So. 2d at 1051).

¶39.   For the foregoing reasons, this Court holds that the chancellor did not err in finding that Section 83-5-209(7), as interpreted *in pari materia*, does create an exemption to the Public Records Act. The manner in which the Legislature determines the exemptions to the Public Records Act is strictly within the power of the Legislature: "[t]he preferred policy of disclosing public records must cede to the legislatively-mandated exemptions thereto as 'the wisdom or folly of the pertinent legislation is strictly within the constitutional power of the Legislature[.]' Any disagreements with those directives are best aimed toward the Legislature." *Miss. State Univ. v. People for Ethical Treatment of Animals*, 992 So. 2d 595, 610 (Miss. 2008) (quoting *Gannett River States Publ'g Co. v. Entergy Miss., Inc.*, 940 So. 2d 221, 226 (Miss. 2006)).

## CONCLUSION

¶40.   Based on today's discussion, we affirm the chancery court's entry of summary judgment in favor of the Commissioner, as Buckel has failed to present evidence indicative of a genuine issue of material fact. We also find that the chancellor did not err in finding that Buckel had made an improper records request and that the Mississippi Public Records Act exempted the documents requested by Buckel. For these reasons, the judgment of the Chancery Court for the First Judicial District of Hinds County is affirmed.

¶41.   **AFFIRMED**.

**WALLER, C.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.**