## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00379-COA

MARY MORGAN                                                    APPELLANT

v.

RIVERBOAT CORPORATION OF MISSISSIPPI                          APPELLEES
D/B/A GOLDEN NUGGET BILOXI HOTEL AND
CASINO, GOLDEN NUGGET BILOXI, INC.,
GOLDEN NUGGET, LLC AND FERTITTA
ENTERTAINMENT, INC.

DATE OF JUDGMENT:               02/27/2023
TRIAL JUDGE:                    HON. CHRISTOPHER LOUIS SCHMIDT
COURT FROM WHICH APPEALED:      HARRISON COUNTY CIRCUIT COURT,
                                SECOND JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:        ROGEN K. CHHABRA
                                KATHRYN CAROLINE BOYD
ATTORNEYS FOR APPELLEES:        SHELDON G. ALSTON
                                ROBERT LANE BOBO
NATURE OF THE CASE:             CIVIL - PERSONAL INJURY
DISPOSITION:                    AFFIRMED - 11/05/2024
MOTION FOR REHEARING FILED:

 **EN BANC.**

 **WILSON, P.J., FOR THE COURT:**

¶1.     Mary Morgan was in the pool at the Golden Nugget Hotel and Casino in Biloxi when

storm clouds formed and it began to rain. Morgan went to the swim-up bar to close out her

tab so she could leave. Suddenly, a strong gust of wind lifted a large cushion from a poolside

"daybed" and sent it airborne across the pool. The cushion was 6'8" by 6'8" by 10"

thick—essentially the same dimensions as a king-size mattress. The cushion struck Morgan

in the back of her head, knocking her down. As Morgan regained her footing, another strong

and sudden wind gust lifted a second daybed cushion and "catapulted" it across the pool at her. The flying cushion "popped [Morgan] in the back of her neck," causing her to hit her head on the concrete bar and go under water. Morgan's husband pulled her out of the water and removed her from the pool.

¶2. Morgan subsequently sued Riverboat Corporation of Mississippi d/b/a Golden Nugget Biloxi Hotel and Casino ("Riverboat") in the Harrison County Circuit Court, alleging that she suffered injuries as a result of Riverboat's negligent failure to ensure that the large cushions were secured in a reasonably safe manner.

¶3. Riverboat answered and later moved for summary judgment, arguing that Morgan could not show (1) that the cushions were an unreasonably dangerous condition or (2) that Riverboat created or had constructive knowledge of the allegedly dangerous condition. Riverboat relied on the deposition testimony of Mac Metzler, who was Riverboat's guest-services and pool supervisor at the time of the incident, and Riverboat's risk manager, Patricia Nash.[1] Metzler testified that to the best of his knowledge, the large daybed cushions had never previously blown off their platforms. Nash likewise testified that she was not aware of any prior incident when the cushions had been blown from their platforms. She stated that the cushions are "very heavy and . . . just lay flat and . . . don't move."

¶4. In response, Morgan argued that the cushions were an unreasonably dangerous condition because Riverboat negligently failed to secure them to their platforms. Morgan relied in part on a purchase order that Riverboat produced in discovery for the cushions,

---

[1] Both Metzler and Nash testified by deposition on behalf of Golden Nugget pursuant to Mississippi Rule of Civil Procedure 30(b)(6).

"bolsters," and decorative "throw pillows." The purchase order stated in part, "Fabrication quote includes labor, outdoor foam inserts, Polv Outdoor Thread and Velcro as noted for attaching cushions to frames." Morgan argued that the purchase order showed that velcro straps were available and intended to secure the cushions to their platforms.

¶5. In rebuttal, Riverboat submitted an affidavit from its facilities director, Matt Newman. Newman stated certain chaise lounges at Riverboat's pool "have Velcro strapping," but "the day beds at issue [in this case] have no strapping of any kind so that they could be tied to the platform on which they sit."

¶6. The circuit court granted Riverboat's motion for summary judgment. The court concluded that there were no genuine issues of material fact, that the cushions were not an unreasonably dangerous condition, and that there was no evidence that Riverboat was negligent or had constructive knowledge of the allegedly dangerous condition. Morgan filed a notice of appeal.[2]

## ANALYSIS

¶7. We review an order granting summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013). Summary judgment "shall" be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show

---

[2] After briefing, Riverboat filed a motion to strike parts of Morgan's reply brief that allegedly raised a new issue that was not raised in Morgan's principal brief on appeal. We do not address Riverboat's argument in its motion to strike because we hold that Riverboat is entitled to summary judgment for reasons unrelated to the allegedly new issue. Accordingly, Riverboat's motion to strike is denied as moot.

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). Indeed, "the court *must* grant summary judgment unless . . . the record demonstrates the minimum quantum of evidence sufficient to justify a determination in favor of the [non-movant] by a reasonable juror." *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1274 (¶19) (Miss. 2007). "When the plaintiff, as in this case, bears the burden of proof at trial, a defendant may elect to move for summary judgment by identifying deficiencies in the plaintiff's evidence." *Carter v. C&S Canopy Inc.*, 381 So. 3d 399, 403 (¶9) (Miss. Ct. App. 2024) (quoting *Maxwell v. Baptist Mem'l Hosp.-DeSoto Inc.*, 15 So. 3d 427, 433 (¶15) (Miss. Ct. App. 2008)).

¶8.     In responding to a motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). "[S]ummary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Buckel v. Chaney*, 47 So. 3d 148, 153 (¶10) (Miss. 2010) (quotations marks omitted). When the nonmoving party "fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial and the moving party is entitled to judgment as a matter of law." *McClinton v. Delta Pride Catfish Inc.*, 792 So. 2d 968, 973 (¶9) (Miss. 2001) (quoting *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1214 (Miss. 1996)). As the Mississippi Supreme Court recently reiterated,

> [t]he presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a *material* one, one that matters in an outcome determinative sense. The existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the *material* issues of fact.

*Federinko v. Forrest County*, 381 So. 3d 343, 351 (¶35) (Miss. 2024) (citations, brackets, and quotation marks omitted) (quoting *Shaw v. Burchfield*, 481 So. 2d 247, 252 (Miss. 1985)).

¶9.     In all negligence cases, "the plaintiff must show duty, breach, causation, and damages." *Clinton Healthcare LLC v. Atkinson*, 294 So. 3d 66, 71 (¶9) (Miss. 2019). In a premises liability case, the nature of the defendant's duty depends on whether the plaintiff was an invitee, licensee, or trespasser at the time of the injury. *Leffler v. Sharp*, 891 So. 2d 152, 156 (¶10) (Miss. 2004). Here, there is no dispute that Morgan was an invitee. "The owner or operator of business premises owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition . . . ." *Jerry Lee's Grocery Inc. v. Thompson*, 528 So. 2d 293, 295 (Miss. 1988). However, a business "is not an insurer against all injuries," *id.*, and "mere proof" that an invitee "was injured while on the premises is insufficient to establish liability." *Jones v. Wal-Mart Stores E. LP*, 187 So. 3d 1100, 1104 (¶12) (Miss. Ct. App. 2016). The business has a "duty to keep the premises in a reasonably safe condition" but "is not required to keep the premises absolutely safe, or in such a condition that no accident could possibly happen to a customer." *Stanley v. Morgan & Lindsey Inc.*, 203 So. 2d 473, 476 (Miss. 1967). Therefore, "regardless of the invitee's precise theory of premises liability, proof that her injury was caused by a 'dangerous condition' is an essential element of her claim." *Jones*, 187 So. 3d at 1104 (¶12). "In every

5

premises-liability case, the plaintiff must show that a dangerous condition exists." *McCullar v. Boyd Tunica Inc.*, 50 So. 3d 1009, 1012 (¶13) (Miss. Ct. App. 2010).

¶10.    Morgan alleges that the Riverboat's large daybed cushions were an unreasonably dangerous condition because they were not fastened to their platforms. The cushions were 6'8" by 6'8" by 10" thick. Riverboat's risk manager testified that the cushions are "very heavy and . . . just lay flat and . . . don't move." The cushions had been in use for about three years at the time of this incident and had never before blown off their platforms.

¶11.    With the benefit of hindsight, it is easy to say that Morgan's injury possibly could have been prevented if the cushions had been fastened to their platforms with velcro straps. But "the Court is not justified in standing on the vantage ground of what did happen on the occasion complained of and look back in the direction from effect to cause." *Paramount-Richards Theatres v. Price*, 211 Miss. 879, 886, 53 So. 2d 21, 22 (1951). Rather, "we must go back and view the situation from the standpoint of foreseeability before the accident occurred." *Id.* "The owner of the premises is not required to anticipate an unusual and improbable result, such as the injury sustained by the plaintiff in this case." *Id.* at 887, 53 So. 2d at 22. "[A] defendant must only take reasonable measures to remove or protect against foreseeable hazards that he knows about or should know about in the exercise of due care." *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 175 (¶48) (Miss. 1999) (quotation marks omitted). "The question in negligence cases is whether the party charged with negligence acted as a reasonable and prudent person would have under the same or similar circumstances. If a defendant's conduct is reasonable in light of the foreseeable risks, *there*

*is no negligence* and no liability." *Buffalo Servs. Inc. v. Smith*, 227 So. 3d 1096, 1101 (¶11) (Miss. 2017) (emphasis added) (quotation marks omitted) (quoting *Donald*, 735 So. 2d at 175 (¶48)).

¶12. The large cushions at issue here had never once blown off their platforms—let alone "catapulted" across the pool with such force as to cause injury. There was no reason for Riverboat's employees to anticipate such an unprecedented event on the day in question. Accordingly, the circuit court was correct to conclude that there were no genuine issues of material fact,[3] that the daybed cushions were not an unreasonably dangerous condition,[4] that there was no evidence of negligence on the part of Riverboat's employees, and that Riverboat was entitled to summary judgment.

---

[3] The parties dispute whether velcro was available to attach the cushions to their platforms. *See supra* ¶¶4-5. However, we conclude that the dispute is not material because the existence of velcro straps would not transform the cushions into a dangerous condition. *See Federinko*, 381 So. 3d at 351 (¶35) ("The existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the *material* issues of fact." (brackets omitted) (quoting *Shaw*, 481 So. 2d at 252)).

[4] *See Vivians v. Baptist Healthplex*, 234 So. 3d 304, 310 (¶23) (Miss. 2017) (Dickinson, P.J., joined by King and Beam, JJ., specially concurring) ("Were there [no similar incidents on the allegedly dangerous steps], no reasonable jury could conclude the steps were unreasonably dangerous."); *id.* at 312 (¶30) (Maxwell, J., joined by Coleman, J., dissenting) ("[F]or the three years leading up to [the plaintiff's] fall, there had been *zero* incidents on the [allegedly dangerous] steps. And there was no reason for [the premises owner] to suspect the steps posed an unreasonable danger . . . ."); *see also Walker v. Cellular S. Inc.*, 309 So. 3d 16, 20, 26 (¶¶5, 38) (Miss. Ct. App. 2020) (The plaintiff alleged that he fell and was injured because the defendant-retailer provided him a "chair[] with legs that did not properly grip the floors," but "there was no . . . evidence that such an event had occurred or that there had even been any incident involving a customer slipping on the floor at all. Without evidence of a dangerous condition, or proof of any similar incidents, no reasonable jury could conclude the chair in relation to the flooring was unreasonably dangerous." (quotation marks omitted)).

¶13.  **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., McCARTY, SMITH, EMFINGER AND WEDDLE, JJ., CONCUR. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND LAWRENCE, JJ.**

**WESTBROOKS, J., DISSENTING:**

¶14.  The majority focuses a great deal of attention on foreseeability and notice; however, these concerns arise only when the dangerous condition has been created by someone other than the owner. *See Karpinsky v. Am. Nat. Ins. Co.*, 109 So. 3d 84, 89 (¶12) (Miss. 2013). "Mississippi law . . . requires that when a dangerous condition exists that was 'created by someone not associated with the business, the plaintiff must produce evidence that the owner or operator had actual or constructive knowledge of the dangerous condition as well as a sufficient opportunity to correct it.'" *Id*. (quoting *Miller v. R.B. Wall Oil Co.*, 970 So. 2d 127, 132 (¶17) (Miss. 2007)). There is a different standard when the dangerous condition was created by the owner. Our caselaw has made clear that "if a plaintiff proves circumstances from which the jury might reasonably conclude that the dangerous condition was one that was *traceable to the proprietor's own act or omission, no proof of notice is necessary*." *Babin v. Wendelta Inc.*, 368 So. 3d 363, 370 (¶23) (Miss. Ct. App. 2023) (emphasis added) (quoting *Miss. Winn-Dixie Supermarkets v. Hughes*, 247 Miss. 575, 156 So. 2d 734, 736 (1963)). Here, it was not necessary to prove that Riverboat had notice of a dangerous condition. Evidence shows that Riverboat created the dangerous condition by failing to secure the large cushions to their platforms in an area that they knew was susceptible to storms and high winds from the Biloxi Sound. Morgan presented the invoice

8

from the purchase of the daybeds, which revealed that velcro straps were included to safely secure the cushions to their platforms. Riverboat's failure to utilize the velcro straps resulted in the cushions flying in the air and injuring Morgan. This was sufficient evidence to survive summary judgment and have the case submitted to a jury. Thus, I respectfully dissent.

## Facts and Procedural History

¶15. On March 25, 2017, Mary Morgan and her husband were guests at the Golden Nugget Biloxi Hotel and Casino (Golden Nugget) in Biloxi, Mississippi. Morgan and her husband were lounging near the pool area when a storm suddenly began to form. This prompted guests to exit the pool. Morgan's husband got out of the pool to head to the bathroom. Morgan waited in the pool at the swim-up bar because the bartender could not locate her credit card to close out their tab. Suddenly, a strong gust of wind picked up a large cushion from one of the daybeds near the swim-up bar. It flew in the air and knocked Morgan in the back of her head, causing her to fall. When she tried to get back up, she was hit by another cushion that caused her to bang her head against the concrete bar and fall in the water. During her deposition, Morgan recalled:

> [O]ut of nowhere, this big mattress come[s] up and hits me in the back of the head, and I went down, shocked me. I mean, I just -- I was shocked and confused. . . . So when I picked my head up and looked to my left, I saw my husband, and he was running to get back to me, and I could see out the corner of my eye, another mattress lifted and just, like, catapulted at me and popped me in the back of the neck, and that - and I hit my head, from what I recall, on the concrete bar and went in the water - went under the water.

Her husband pulled her out of the water and sat her in a chair. Security personnel approached her to check on her and asked if she needed an ambulance, but she declined.

They also made her husband fill out an incident report and instructed him to contact the risk-management department before Morgan sought medical treatment. They eventually left and returned to their hotel room. Morgan testified that once she got back to her hotel room and the adrenaline wore off, her neck and head began to throb. Her husband became concerned and decided to take her to Ocean Springs Hospital. Two days later, she was referred to Bienville Orthopaedic Specialists LLC for physical therapy. Morgan revealed that her injuries began to interfere with her work, sleep, and daily routine. She also said that she frequently had headaches and migraines. She was "constantly twitching and moving," and it was difficult for her to "sit for any length of time . . . without being in pain." Eventually, she completed physical therapy and started seeing a chiropractor, but her injuries persisted.

¶16. When Morgan's husband contacted the risk-management department, personnel informed him that it was not their policy to pay medical or personal bills. Morgan and her husband sought legal advice and ultimately decided to bring a civil action. On November 25, 2019, Morgan filed a lawsuit against Riverboat Corporation of Mississippi d/b/a/ Golden Nugget Biloxi Hotel and Casino in the Harrison County Circuit Court. She alleged negligence; negligent hiring, retention, supervision, and training; vicarious liability; bad faith/breach of contract; and gross negligence. Riverboat filed their answer and affirmative defenses on February 5, 2020.

¶17. Leonard Metzler and Patricia Ann Nash, representatives of Golden Nugget, were deposed on February 23, 2022. Metzler was the guest services supervisor at the time of Morgan's injury. He testified that in this role, he "was essentially the pool supervisor" and

10

spent ninety percent of his time monitoring the pool area during his shift. Nash was the executive administrative assistant at the time of Morgan's injury. She testified that in this role, she would walk the property for safety checks four times a week. She said she would check the pool area during these walks whenever the pool was open. Both Metzler and Nash represented that the cushions were not secured, but there had not been any prior instances where the daybeds had been blown off of their wooden frames.

¶18. Matthew Newman, the facilities director at the Golden Nugget, provided an affidavit stating, "Each of the day beds at issue have no strapping of any kind so that they could be tied to the platform on which they sit. The chase lounges utilized at the pool, however, have Velcro strapping." Newman claimed he had "personal knowledge of the equipment utilized throughout the Golden Nugget's grounds, including but not limited to the furniture and other equipment in the pool area." To the contrary, an invoice that was produced during discovery revealed that velcro was included with the order of the daybeds. There were only three items on the invoice: (1) square pool bed cushions; (2) bolsters for square beds; and (3) 24" throw pillows. The description of the pool bed cushions provides: "**6'8" x 6'8" x 10"** . . . **Thick Cushions** . . . **Outdoor Poly Thread**." (Emphasis added). In the notes section on the following page, it states: "Fabrication quote includes labor, outdoor foam inserts, **Poly Outdoor Thread and Velcro as noted for attaching cushions to frames**." (Emphasis added). The invoice does not indicate that chase lounges or any supplies for them were included in the order.

¶19. On November 29, 2022, Riverboat filed a motion for summary judgment, arguing that

summary judgment was proper for two reasons: "(1) the pool cushions at issue were not an unreasonably dangerous condition as a matter of law; and (2) even if they were, Morgan could not prove that Riverboat created an allegedly dangerous condition or that it had actual or constructive knowledge that said alleged condition existed." The court conducted a hearing on the motion on February 16, 2023. The court entered an order granting the motion for summary judgment on February 27, 2023. Morgan subsequently filed her notice of appeal on March 29, 2023.

## Standard of Review

¶20.    "It is well-settled that appellate review of the trial court's grant or denial of a motion for summary judgment requires the application of de novo review." *Adams v. Graceland Care Ctr. of Oxford LLC*, 208 So. 3d 575, 579 (¶9) (Miss. 2017). "Summary judgment is appropriate and 'shall be rendered' if the 'pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Karpinsky*, 109 So. 3d at 88 (¶10) (quoting M.R.C.P. 56(c)). The evidence will be viewed "in the light most favorable to the party against whom the motion has been made." *Id.* at (¶9).

## Discussion

¶21.    "Premises liability is a 'theory of negligence that establishes the duty owed to someone injured on a landowner's premises as a result of "conditions or activities" on the land . . . .'" *Thomas v. Boyd Biloxi LLC*, 360 So. 3d 204, 213 (¶33) (Miss. 2023) (quoting

*Johnson v. Goodson*, 267 So. 3d 774, 777 (¶11) (Miss. 2019)).  Under Mississippi law, a

three-step process is employed in premise liability cases.  "First, we must determine whether

the injured party was an invitee, licensee, or a trespasser at the time of the injury. Next, we

must determine what duty was owed to the injured party by the business owner/operator.

Finally, we must determine whether that duty was breached." *Walker v. Cellular S. Inc.*, 309

So. 3d 16, 24 (¶27) (Miss. Ct. App. 2020) (quoting *Haggard v. Wal-Mart Stores Inc.*, 75 So.

3d 1120, 1124 (¶9) (Miss. Ct. App. 2011)).  "Regarding the duty element, 'the owner or

operator of business premises owes a duty to an invitee to exercise reasonable care to keep

the premises in a reasonably safe condition.'" *Thomas v. Shed 53 LLC*, 331 So. 3d 66, 70

(¶13) (Miss. Ct. App. 2021) (quoting *Jones v. Wal-Mart Stores E. LP*, 187 So. 3d 1100, 1103

(¶12) (Miss. Ct. App. 2016)).

¶22.    There is no dispute that Morgan was an invitee at the Golden Nugget and that she was

owed a duty of care.  The issue is whether Riverboat breached its duty of care.  To prove

breach, Morgan must show that a dangerous condition existed.  *See McCullar v. Boyd Tunica*

*Inc.*, 50 So. 3d 1009, 1012 (¶13) (Miss. Ct. App. 2010).  Additionally, she must prove one

of the theories of premises liability.  To do this, she must either:

> (1) show that some negligent act of the defendant caused [her] injury; or (2)
> show that the defendant had actual knowledge of a dangerous condition and
> failed to warn the plaintiff; or (3) show that the dangerous condition existed
> for a sufficient amount of time to impute constructive knowledge to the
> defendant, in that the defendant should have known of the dangerous
> condition.

*Walker*, 309 So. 3d at 24 (¶29).  "[R]egardless of the invitee's precise theory of premises

liability, proof that her injury was caused by a 'dangerous condition' is an essential element

of her claim." *Thomas v. Shed 53 LLC*, 331 So. 3d at 71 (¶17) (quoting *Jones*, 187 So. 3d at 1104 (¶12)). Morgan's strongest theory is that Riverboat's negligent act caused her injury. She contends that Riverboat was negligent in keeping large cushions unsecured to their platforms in an area that is susceptible to high winds from the Biloxi Sound. She also argues that velcro straps were included with the order of the daybeds, and the incident could have been prevented had Riverboat utilized them. The majority emphasizes "foreseeability" and highlights that "the cushions at issue here had never once blown off their platforms"; therefore, "[t]here was no reason for the Riverboat's employees to anticipate such an unprecedented event on the day in question." *Ante* at ¶¶11-12. However, "[a]ctual or constructive knowledge of a dangerous condition is not a required element of proof in a premises-liability case where a business owner's negligence caused the danger." *McCullar*, 50 So. 3d at 1012 (¶16) (citing *Elston v. Circus Circus Miss. Inc.*, 908 So. 2d 771, 773 (¶9) (Miss. Ct. App. 2005)). We have held that "if a plaintiff proves circumstances from which the jury might reasonably conclude that the dangerous condition was one that was traceable to the proprietor's own act or omission, no proof of notice is necessary." *Babin*, 368 So. 3d at 370 (¶23) (quoting *Miss. Winn-Dixie Supermarkets*, 247 Miss. at 584,156 So. 2d at 736).

¶23.    The majority also contends that failing to utilize the straps would not transform the cushions into a dangerous condition. But "[t]here is no specific definition of a 'dangerous condition.' A condition may be considered 'dangerous' in even the simplest of circumstances." *Id*. at (¶24). "Whether a dangerous condition exists may be a question of fact for the jury." *Keckley v. Estes Equip. Co.*, 276 So. 3d 1230, 1236 (¶18) (Miss. Ct. App.

2018). We find two cases that are instructive on this point.

¶24. In *Keckley*, this Court reversed a grant of summary judgment because we found that there were genuine issues of material fact regarding whether a loose yellow caution tape could be considered a dangerous condition. *Keckley*, 276 So. 3d at 1241 (¶37). Estes Equipment Company was hired to install an underground storage tank at Pilot's Flying J in Pearl, Mississippi. *Id*. at 1233 (¶4). After the construction was complete, yellow caution tape remained in the area "for some period of time to allow the concrete to cure." *Id*. Teri Keckley, a truck driver, stopped at Flying J for a delivery. *Id*. at (¶5). While approaching the sidewalk en route to the convenience store, "she noticed an approximately thirty-foot piece of yellow caution tape 'laying flat on the ground' all the way across the sidewalk." *Id*. at 1234 (¶6). The tape appeared to be "loose" and "not attached to anything," so she attempted to step over it. *Id*. "Keckley testified that the tape suddenly, unexpectedly, and without warning rose up slightly and caused her to trip and fall." *Id*. at 1238 (¶23). After falling, she realized that the tape was attached to a pole on one side of the sidewalk and a brick pillar on the other side of the sidewalk. *Id*. at 1234 (¶6). The circuit court ultimately granted summary judgment in favor of Estes Equipment and Flying J, holding that Keckley failed to establish that an unreasonably dangerous condition existed. *Id*. at 1235 (¶13). However, we reversed, finding that a reasonable jury could conclude that the tape, functioning as a tripwire, was a dangerous condition. *Id*. at 1237 (¶21). This Court relied on caselaw from the United States Court of Appeals. The Fifth Circuit reversed a grant of summary judgment after concluding that a defect in an automatic door threshold could be

15

considered a dangerous condition. *Cox v. Wal-Mart Stores East LP*, 755 F.3d 231, 235 (5th Cir. 2014). In that case, a woman was injured when she walked through an automatic sliding door at a Walmart in Fulton, Mississippi. *Id*. at 232. A witness testified that the door threshold appeared to be "rocking" whenever customers entered and that "this occurred because the plate was not secured tightly to the ground, as if there were screws loose." *Id*. The Fifth Circuit ultimately held that although the alleged defective threshold was not considered an "unreasonably dangerous condition," a jury could infer that "the hidden and surprising nature of the defect" transformed the door threshold into a dangerous condition. *Id*. at 235 ("The fact that the alleged defective condition changed suddenly and without warning . . . is sufficient for a reasonable jury to conclude that it creates an unreasonable or unusually dangerous condition."). The same rationale was applied in *Keckley*. We reasoned that the tape was similar to the defective threshold in *Cox*:

> According to Keckley's testimony, the tripwire-like effect of the caution tape was "hidden and surprising"—just like the unexpected "rocking" of the door threshold in *Cox*. *Id*. Like the Fifth Circuit in *Cox*, we emphasize that on a motion for summary judgment, we must accept the plaintiff's sworn testimony as true. *Id*. And we hold that "[t]he fact that the alleged defective condition changed suddenly and without warning . . . is sufficient for a reasonable jury to conclude that it creates an unreasonable or unusually dangerous condition."

*Keckley*, 276 So. 3d at 1238 (¶23) (quoting *Cox*, 755 F.3d at 235).

¶25.    Just last year, this Court also reversed a grant of summary judgment after finding that a reasonable jury could conclude that a mat constituted a dangerous condition. *Babin*, 368 So. 3d at 374 (¶35). In *Babin*, a woman was injured at a Wendy's restaurant when a mat at the entrance slipped from under her and caused her to fall back and injure her right foot. *Id*.

16

at 365 (¶4). Babin's husband testified that the bottom of the mat was "wore out" and her son testified that the mat had "crinkles" and did not lie flat. *Id*. Babin also retained a safety expert, who testified that he examined the mat and noticed that the bottom had "very few slip-resistant properties." *Id*. at 367 (¶14). He determined that the mat "was not designed to be used in a high traffic commercial setting and presented an unreasonably dangerous condition." *Id*. On the other hand, the general manager testified that she purchased the mat a week prior to the incident, had performed a premises inspection before the store opened on the day in question, and did not notice the mat slipping or moving. *Id*. at 366 (¶11). Also, the district manager testified that he had placed the mat in the vestibule on the morning of the incident, and he said it did not move or slide at that time. *Id*. at (¶9). The circuit court granted summary judgment in favor of Wendy's, holding that Babin failed to show that Wendy's created a dangerous condition and that there was no "dangerous condition that existed for a sufficient amount of time so that the Defendant should have known of the existence of the dangerous condition." *Id*. at 368 (¶18). Relying in part on *Cox* and *Keckley*, this Court reversed after finding there was sufficient proof in the record that contradicted the circuit court's ruling and presented a genuine issue of fact for a jury to decide. *Id*. at 371 (¶26). Notably, the Court highlighted that the managers alleged that the mats were new and commercially reasonable; however, some evidence contradicted this representation:

> Wendy's attached to its summary judgment motion a Lowe's receipt dated May 8, 2019, and Lowe's website description of a 3'x4' Mohawk Home Utility Bay Black Door Mat, which sold for $19.98. But the mat that was preserved and inspected by Babin's expert did not match the description of the allegedly commercially reasonable 3'x4' mat on the Lowe's website. Instead, the mat in question, which was also purchased the week before, measured two feet by

17

three feet and cost $12.98.

*Id*. at (¶27).

¶26.    Here, sufficient evidence in the record demonstrates a genuine dispute.  Additionally, like the cases above, the circumstances here show that no incidents or injuries were caused by the defective condition prior to Morgan's injury.  Morgan testified that a strong gust of wind picked up the cushions and knocked her into the concrete bar, causing her to sustain injuries.  Like the defective threshold in *Cox* and the loose caution tape in *Keckley*, the defective condition here (the *unsecured* cushions) knocked Morgan over "suddenly and without warning."  Morgan alleges that having these large cushions at a guest pool on the Biloxi Sound, coupled with the failure to secure these cushions with the included velcro straps, created a dangerous condition.  Newman testified that there were no velcro straps for the daybeds but that there were velcro straps for the chase lounges.  However, Morgan points to the invoice of the purchase of the daybeds, which contradicts what Newman represented in his affidavit.  The only items listed on the invoice were the 6'8" x 6'8" x 10" cushions for the day beds, the bolsters for the daybeds, and throw pillows.  There was no indication whatsoever on the invoice that chase lounges were included in the order.  Furthermore, the size of the cushions described in the invoice are rather large and would likely not fit on chase lounges. The items were all related to the daybeds and the note section confirmed that velcro was included "for attaching cushions to frame."  Logically, if the only items that appear on the invoice concern the daybeds, then the note about the "velcro . . . for attaching cushions to frames" was referring to the cushions for the daybeds.  This leaves a genuine issue of

18

material fact regarding whether velcro straps were included and whether Riverboat failed to utilize them to secure the cushions and prevent them from being blown off their platforms and injuring patrons.

¶27. "[T]he circumstantial-evidence doctrine allows the jury to draw an inference of the defendant's negligence[.]" *Est. of Ellis v. MMC Materials Inc.*, 311 So. 3d 691, 696 (¶21) (Miss. Ct. App. 2021) (quoting *Lyon v. McGee*, 249 So. 3d 436, 444 (¶26) (Miss. Ct. App. 2018)). "Juries may reasonably infer the existence of one fact from the existence of another fact or set of facts." *Clinton Healthcare LLC v. Atkinson*, 294 So. 3d 66, 71 (¶12) (Miss. 2019) (citing *Miss. Winn-Dixie Supermarkets*, 247 Miss. at 584-85, 156 So. 2d at 736). "Negligence 'may be found from circumstantial evidence of adequate probative value.'" *Id.* (quoting *Miss. Winn-Dixie Supermarkets*, 247 Miss. at 584, 156 So. 2d at 736). "Verdicts may rest upon reasonable probabilities." *Id.* Here, a jury could infer from the invoice that the velcro was clearly included with the order, and Riverboat simply chose not to use them to secure the cushions, creating a dangerous condition that caused Morgan's injuries. This evidence was sufficient to survive summary judgment and allow the question to be submitted to a jury. We must keep in mind that "summary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried." *Brown v. Credit Ctr. Inc.*, 444 So. 2d 358, 362 (Miss. 1983).

¶28. Viewing the evidence and making inferences in the light most favorable to Morgan, genuine issues of material fact are present in this case. The invoice confirmed velcro was

included with the purchase, and the only items on the invoice were related to the daybeds. Accordingly, a jury could infer that the velcro was provided to secure the cushions to the daybeds. A jury could also infer that Riverboat negligently failed to utilize them. Morgan "should be given the benefit of every reasonable doubt." *Clinton Healthcare*, 294 So. 3d at 72 (¶12) (quoting *Renner v. Retzer Res. Inc.*, 236 So. 3d 810, 815 (¶21) (Miss. 2017)). "When doubt is present about whether any genuine issues of material fact exist, the trial court should deny the motion for summary judgment and permit a full trial." *Id.*

¶29. The record confirms that genuine issues of material fact exist regarding whether velcro was included with the daybed cushions to secure them to their frames and whether Riverboat failed to utilize them. These questions require a determination that should have been presented to a jury. Accordingly, I find that summary judgment was inappropriate here. Therefore, I respectfully dissent.

**McDONALD AND LAWRENCE, JJ., JOIN THIS OPINION.**